### MORRIS v. OWEN.

(Court of Civil Appeals of Texas. Amarillo. Dec. 2, 1911. Rehearing Denied Jan. 19, 1912.)

1. PARTNERSHIP (§ 311*)—ACTIONS—INSTRUCTIONS.

In an action by the personal representative of a deceased partner to set aside, because of misrepresentations, a settlement made with the surviving partner, and for a share in the assets, where the evidence tended to show that the misrepresentations were only as to the amount of the loss of the firm, and that the personal representative would have made the settlement, if the exact amount of the loss had been disclosed, and in view of the failure of the court in his main charge to tell the jury that the settlement could not be set aside, unless the misrepresentations injured the personal representative, requested charges that

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

the settlement could not be set aside, if personal representative would have made it, regardless of misrepresentations, were improperly refused.

[Ed. Note.—For other cases, see Partnership, Dec. Dig. § 311.*]

2. COMPROMISE AND SETTLEMENT (§ 19*)— MISREPRESENTATIONS — RIGHT TO RESCIND CONTRACT.

A settlement induced by misrepresentations cannot be set aside, where the misrepresentations in no wise injured the plaintiff.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 71–75; Dec. Dig. § 19.*]

3. PARTNERSHIP (§ 275*) — DISSOLUTION — DEATH OF PARTNER.

The death of one of a firm dissolves the partnership and devolves upon the surviving partner the duty of winding up the firm business.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 621; Dec. Dig. § 275.*]

4. PARTNERSHIP (§ 311*)—DEATH OF PARTNER —DAMAGES.

Where one of a firm, engaged in purchasing, for speculation, cotton which was of fluctuating value, died, and his personal representative, induced by the misrepresentations of the surviving partner, made a settlement, the question of the personal representative's damage in determining the validity of the settlement must be determined by the condition of the partnership affairs at the time of the settlement.

[Ed. Note.—For other cases, see Partnership, Dec. Dig. § 311.*]

5. PARTNERSHIP (§ 100*.)—PURCHASE OF CO-PARTNER'S INTEREST—VALIDITY.

A partnership being a legal entity, separate and apart from that of the individuals composing it, a sale by one who was the surviving partner in a dissolved partnership to a firm of which he was a member, if made in good faith, is not invalid as a sale to himself.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 154; Dec. Dig. § 100.*]

Appeal from District Court, Wilbarger County; S. P. Huff, Judge.

Action by Mrs. L. I. Owen against P. M. Morris. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

W. D. Berry, for appellant. R. W. Hall, for appellee.

PRESLER, J. This was a suit brought by Mrs. L. I. Owen for herself and as next friend of her minor children against P. M. Morris, alleging that said Morris and G. S. Owen, deceased, husband of appellee, formed a partnership about the 1st day of September, 1909, for buying cotton and other farm products, under the name of P. M. Morris & Co., said Owen to do the buying and selling, and appellant to furnish the money and they were to share equally the profits or losses; that the partnership continued until the 11th day of November, 1909, when it was dissolved by death of the said Owen; that there had been no settlement of the partnership business, prayed for an accounting, and that appellant be adjudged to pay appellee what, if anything, was due her.

Appellant answered by general and special exceptions and general denial, and by special answer that such a partnership had existed, but that it was agreed between him and the said G. S. Owen that the cotton bought should be sold at night of the day it was bought, and that if at any time they should have any cotton on hand and the price of it should go down to where there was a loss in it, said Owen was to put up a margin of $2 per bale on it; that afterwards, at the request of said Owen, cotton was held from time to time; that it was also understood by the parties to the partnership that the firm was to pay the interest on the money used in the business, and he ratified and confirmed this understanding; that at the time of the death of said Owen and for some time prior thereto the firm had 616 bales of cotton on hand, the price of which had gone down till there was a loss on it, and appellant had called upon Owen to put up his margin according to contract, but, before he did so, was taken ill with his last illness, and died without doing so; that appellee after his death refused to put up any margin, and requested appellant to take the business and assets and relieve her and the community estate of herself and G. S. Owen from liability and loss thereon, and agreed, if he would do so, to transfer all interest in same to him; that on the 15th day of November, 1909, he did enter into a written contract with appellee by which she conveyed to him all interest of herself and said community estate in said business and the assets thereof in consideration that the appellant would assume all liabilities thereof and hold her and said estate harmless against loss or risk; that at the death of G. S. Owen there was a loss in said business of several hundred dollars; that the cotton market was unsettled and fluctuating; that half of said loss was chargeable to G. S. Owen's estate, and that if the business had at that time been closed out, there would have been an indebtedness of about $400 against said estate; that if for any reason said contract of settlement should not be held final, the matters in controversy should be adjudicated according to the condition of the business at the time of the death of G. S. Owen; that the assets at that time would lack about $800 of paying the obligations of said business, and that appellant should have judgment for one-half thereof. He further answered that about the 15th of November, 1909, and after said settlement was made, the 616 bales of cotton so had on hand and which was all the assets of said firm, were sold to P. M. Morris & Son, a firm composed of P. M. Morris and J. B. Morris; that at that time said cotton was worth less than it cost, and there was a loss in it of about $800.

Appellee replied in supplemental petition

that at the time of said settlement appellee was ignorant of her rights, and had no information about said business except what she received from appellant, and relied upon him; that he willfully and fraudulently misinformed her that it was not necessary to put up any margin, and there had been no agreement to do so, and that if said firm owed any money it was a trivial amount compared with the assets thereof; and that said settlement was a fraudulent attempt to overreach appellee and said community estate, and was without consideration.

Appellant answered this in a supplemental answer that at the time said settlement was made appellee had full opportunity to know all the facts and was fully informed as to said business, and that, several days after said contract of settlement was made, appellant offered to get the cotton back and disregard the settlement and let her go on with her interest in the business till it was wound up according to the terms of the partnership, but she declined this, and notified appellant that she was satisfied with the settlement and wanted it to stand as it was; that if she ever had any complaint she had waived it, and is now estopped to deny or question the validity of said settlement.

The case was tried before a jury, and a verdict returned in favor of appellee for $1,592.73 against appellant, upon which judgment was rendered on the 9th of September, 1910. On the next day appellant filed his motion for new trial, and on the 17th of same month filed and presented his amended motion for new trial, which was overruled, and he in open court duly excepted to such ruling and gave notice of appeal, and has filed his appeal and supersedeas bond and perfected his appeal to this court.

Appellant, in his brief, assigns numerous errors to the action of the court in the trial of this case, which will not be here considered consecutively in disposing of this appeal. The theory upon which appellant contends that appellee should not recover herein, as disclosed by his brief, appears to be (1) that appellant and appellee entered into a settlement of the partnership affairs of P. M. Morris & Co., as shown by the written instrument of settlement in evidence of date November 15, 1910, and that said settlement then made is legal and binding upon appellee, and concludes her right to recovery in this case; (2) that aside from said settlement, and if the same should be held invalid for any reason, then, that acting as the surviving partner of said firm of P. M. Morris & Co., and in pursuance of his legal right and duty to wind up and settle the business of said partnership, the appellant did on the 15th day of November, 1910, make a sale of the entire property of said partnership to a firm or partnership composed of appellant and J. B. Morris, and that the same was a valid and legal sale of the assets and property belonging to the partnership of P. M.

Morris & Co. and theretofore composed of appellant and G. S. Owen, appellee's deceased husband; and that appellee is bound by said sale and concluded from claiming any participation in any profits accruing from an advance in price after said sale of the assets conveyed. We think that, as contended by appellant, the evidence tends strongly to show that there were no profits belonging to said partnership from the conduct of said business, either at the death of G. S. Owen, at the time of the alleged settlement or at the time of the alleged sale, and that, as shown by both the pleadings and the evidence, the deceased partner, G. S. Owen, had contributed nothing to the capital of said partnership and that appellee was only interested in the possible profits or losses pertaining to said business and in the ascertainment and settlement of same. Appellee admitted the execution of the agreement of settlement in evidence, but pleaded in avoidance thereof that she was induced to sign and execute the same because of false and fraudulent representations then made by appellant as to the amount of the loss then accrued to the business and to the partnership, and as to the legal requirement and necessity of her putting up $2 per bale on the 616 bales of cotton then held by the firm and constituting its principal asset, and that she was ignorant and uninformed as to the law and her rights in the premises, and that she relied upon the honesty and integrity of appellant, to which appellant by supplemental answer replied that appellee had full opertunity to know the facts and all the facts and was fully informed when she executed the contract of settlement and that several days after the date of said settlement he offered to get the cotton back and disregard the settlement and let her go on with her interest in said cotton until the business of said firm could be wound up under the terms of the partnership contract, and that she declined to do this and notified appellant that she was entirely satisfied with the settlement and wanted the settlement to stand as it was made, and that because of said statements appellee is estopped to deny or question the validity of said settlement.

[1] Appellant, in his first assignment of error, complains of the refusal of the court to give special charge No. 2, which is as follows: "The jury are charged that although you may find that the statement made as to the time of the settlement, as shown by the contract introduced in evidence, as to the amount of indebtedness, was not correct, yet before you can find against defendant you must find such misrepresentations were the inducements that led plaintiff to make such contract, and that such misrepresentations contributed to her damage, and if you find that she would have made said contract if the correct amount of loss or the correct condition of the business had been given, then you should find for the defend-

ant." And also, under his second assignment, complains of the refusal of the court to give his special charge No. 3, which is as follows: "You are charged that though you should find that at the time the contract of settlement introduced in evidence, was entered into, the defendant represented that the loss in said business was something over $800, and that representation turned out not to be correct, but there was in fact a loss of some amount and you find and believe that said Mrs. Owen would have entered into such contract of settlement if the correct amount of loss had been given, you will find for the defendant and so say by your verdict." We are of the opinion that the assignments are well taken, inasmuch as the evidence tended to show that appellee would have made the settlement if the exact amount of the loss and the condition of the business had been given, and in view of the further fact, as disclosed by the record, referred to in appellant's eighth assignment of error, that the trial court, in his general charge to the jury, in instructing it as to the effect of the alleged misrepresentations of appellant upon the contract of settlement, failed to charge the jury in substance or effect that it was necessary for them to find that even if appellant induced the appellee to execute the contract of settlement by false representations, they could not set it aside and disregard said settlement unless they found that the making of it was to her injury, and that, according to the great weight of the evidence, the misrepresentations related only to the amount of the loss as stated at the time of the making of the contract of settlement, we think that appellant was entitled to have the issue as to whether or not appellee was damaged by said misrepresentations submitted to the jury, and also as to whether she would have made said contract if the correct amount of loss or the correct condition of the business had been given; that said inquiries were material to the determination of the validity of the settlement in question and to the rights of the appellant thereunder. We therefore conclude that the court erred in refusing to give the special charges referred to.

[2] Appellant, by his eighth assignment, raises in part the same question hereinbefore considered in that in said assignment he complains of the failure of the court in his general charge to instruct the jury in effect that before appellee could be relieved from said agreement because of the alleged misrepresentations of appellant that they should find that she was injured by the act induced by said misrepresentations. As hereinbefore indicated, we are further of the opinion that appellant's said eighth assignment of error is well taken, and that the charge of the court therein referred to, in addition to the other issues submitted to the determination of the jury, as to the misrepresentations alleged to have been made by appellant in procuring said contract of settlement, should also have submitted to the jury the further issue of injury to appellee because of said misrepresentations and the act induced thereby, and that said failure to so charge and submit said issue is upon a material phase of this case. Read v. Chambers, 45 S. W. 742; Carson v. Houssels, 51 S. W. 290; Lyon v. Bedgood, 54 Tex. Civ. App. 19, 117 S. W. 899.

[3, 4] In view of the fact that, under the law, the death of G. S. Owen dissolved the partnership and the duty devolved upon the surviving partner, P. M. Morris, to wind up and settle the business of said partnership and of the fluctuating values of the assets of the partnership (616 bales of cotton, held on speculation) we are inclined to the opinion that the question of appellee's damage or injury, if any, because of said misrepresentations and said contract induced thereby, in passing on the binding force of the contract should be determined by the fact of profit or loss found to exist at the time of making the agreement of settlement, and that appellee could not be permitted to wait until after the cotton advanced in price and a profit was assured, and then be relieved of the force of the agreement as against herself, having in the meanwhile been protected by the agreement against liability of loss, the evidence showing no dissatisfaction with the agreement until several days after making the same and the cotton having in the meanwhile advanced and a profit become assured. Especially is this true in view of the testimony of the case, tending to show that at the time of the settlement she wanted to be relieved of liability of loss and afterwards to the effect that she wanted the agreement to stand. We therefore conclude that the court erred in refusing to give appellant's special charge No. 4, to the effect in substance that though the jury should find that at the time said contract of settlement was made defendant stated the loss in said partnership to be greater than it was, and though such representations induced her to make such settlement, and that she would not have made it if the correct amount of the loss had been stated and the making of such settlement was to her damage, then they should consider the condition of such business at the date of such settlement, and if there was a loss at such time the defendant should have a verdict for one-half of such loss, and if there was a profit then plaintiff should have a verdict for one-half of such profit. Butler v. Anderson, 107 S. W. 656.

[5] Appellant, under his ninth assignment of error, further complains that the court erred in the fourth paragraph of its charge, wherein he instructed the jury in substance that if they found that P. M. Morris, the defendant, sold the partnership property to P. M. Morris & Son, and that defendant was a member of such firm, it would be a trans-

fer to himself, and he would hold the said property in trust for the representatives of G. S. Owen, and they would be entitled to their interest or share in said partnership, and contends that P. M. Morris, as the surviving member of the partnership, had the right to sell the assets of the business to wind up the estate, even if there had been no settlement and there was no reason why he could not sell to P. M. Morris & Son as well as any one else, and that the evidence showed that he sold all there was of the partnership assets to P. M. Morris & Son, and got more for them than they at the time of the sale were worth, and thereby relieved the partnership of any further liability. We are of the opinion that the charge complained of was error, in that it peremptorily instructed the jury in the event that they found that the sale was made to the firm of P. M. Morris & Son, and that appellant was a member of such firm, that they should hold such sale invalid as having been made to himself. It being well settled that a firm or partnership is a legal entity of itself, existing separate and apart from that of the individual persons composing it, we think that a transfer or sale made in good faith, of the property, to the firm of P. M. Morris & Son, by the surviving partner of the firm of P. M. Morris & Co., for the purpose of winding up and settling the business of said last-mentioned firm, and with no purpose on the part of said survivor to defraud appellee in said transaction, should be sustained and that the court below should have in substance so instructed the jury.

In view of the necessity to reverse and remand this case as hereinbefore indicated, because of the errors hereinabove pointed out, we do not consider it necessary to the determination of this appeal to pass upon and determine the remaining assignments of appellant, as it will not be assumed that the errors complained of under said assignments will occur upon a new trial. We are therefore of the opinion that this cause should be reversed and remanded for a new trial, and it is accordingly so ordered.

HALL, J., not sitting.