**KOTHMANN v. SOUTHWEST CO., Inc.**

No. 9630.

Court of Civil Appeals of Texas. San Antonio.

Feb. 26, 1936.

Rehearing Denied March 18, 1936.

Goeth, Webb & Goeth, of San Antonio, and Carl Runge, of Mason, for appellant.

Arnold & Cozby and Fellbaum & Fellbaum, all of San Antonio, for appellee.

BOBBITT, Justice.

Appellee sued upon a promissory note, payable to it, executed by appellant, for the principal sum of $4,000. It appears that appellee corporation, Southwest Co., Inc., and Southwest Security Company, a Nevada corporation, and Lloyds Southwest Insurers, though separate legal entities, were operated or controlled by the same persons, had common offices and telephones, and, for all practical purposes, were convenient legal fictions; and, in so far as the transaction here involved is concerned, were all dominated and used by George Guthrie, who was the president of the two named corporations, and the attorney in fact for the concern known as Lloyds Southwest Insurers, an association under chapter 19, title 78, Revised Civil Statutes of Texas, 1925 (article 5013 et seq., as amended, Vernon's Ann.Civ.St. art. 5013 et seq.).

Appellant originally purchased 100 shares of preferred and 50 shares of common stock in Southwest Security Company, upon representations made to him by Guthrie, the stock being sold to him by appellee herein, Southwest Co., Inc. In payment of such stock, appellant executed and delivered two promissory notes, each for $5,000, the stock remaining with the seller as collateral security for the notes.

Appellant introduced evidence of representations made to him by Guthrie of the value of the stock; of its earning power, and of promises that the notes would be fully liquidated by the dividends to be paid on the stock, and that he would not be called upon to pay out any money.

After one or two extensions, and an alleged payment on account of the notes by crediting the one alleged dividend paid on the stock, the said Guthrie again prevailed upon appellant to invest in another of his attractive enterprises; this time

in Lloyds Southwest Insurers, of which Guthrie was attorney in fact. A subscription by appellant of $12,500 in Lloyds Southwest Insurers was obtained by Guthrie, who evolved a plan or scheme whereby appellant's said $12,500 subscription would be represented by $10,000 in securities through deposit with Lloyds Southwest Insurers, of the original stock purchased by appellant in Southwest Security Company; the said Guthrie, as president of the two corporations and as attorney in fact of Lloyds Southwest Insurers, to arrange all the details of this transfer; and the balance of such subscription by a payment of $2,500 through the execution of still another note for $5,000, payable to appellee, the alleged proceeds of which note were to be applied (a) $2,500 to Lloyds Southwest Insurers for the balance of the subscription therein, and (b) $2,500 on account of the security notes executed for $10,000 in the Lloyds concern.

Appellant thereafter paid $1,200, in cash, in reduction of this last of $5,000 note, $1,000 being applied on the principal thereof, and $200 on interest, and this suit is for the balance of principal thereof, $4,000, plus interest and attorney's fees.

Appellant in his third amended original answer, after general demurrer and general denial, by further answer duly sworn to, sets up allegations of fraud, conspiracy, and failure of consideration, and joins therewith a claim for damages in the sum of $1,200, with interest thereon from the date of this payment.

The case was tried before a jury; but after completion of the testimony the trial judge instructed a verdict in favor of appellee upon its suit on the $4,000 note, and against appellant upon his cross-action for $1,200.

The trial court, having instructed a verdict for appellee, and having taken the case from the jury, the primary question before us for review is whether or not the evidence adduced at the trial was sufficient to raise a question of fact for the jury. We are not called upon to determine the preponderance of the evidence, but only its sufficiency as a matter of law. For this purpose the evidence must, of course, be considered in the light most favorable to appellant. Goodwin v. Abilene State Bank (Tex.Civ.App.) 294 S.W. 883; Progressive Lumber Co. v. Marshall & E. T. R. Co., 106 Tex. 12, 155 S.W. 175; Charles

v. El Paso Ry. Co. (Tex.Com.App.) 254 S.W. 1094.

The rules for determining whether evidence is sufficient as a matter of law, and defining the province of the court and the jury, have been stated by our Supreme Court as follows:

Chief Justice Wheeler, in an opinion in Briscoe v. Bronaugh, 1 Tex. 326, 46 Am. Dec. 108, defines the province of the court and that of the jury as follows: "Of the weight of evidence they are the judges. The law, it has been said, has no scales wherein to weigh the different degrees of probability; still less to ascertain what weight of evidence shall amount to proof of any disputed fact. Its business is to define, to distinguish, and to apply legal consequences to ascertained facts; but whether a fact be probable or improbable, true or false, admits of no legal definition. The law therefore refers the weight of evidence, and of the different degrees of probability to the jury, who are to be guided in their decision by their conscientious judgment and belief under all the circumstances of the case."

The difficulty is in determining what evidence is sufficient as a matter of law in a given case. Justice Brown, in Lee v. International & G. N. R. Co., 89 Tex. 583, 588, 36 S.W. 63, 65, thus states the rule: "To authorize the court to take a question from the jury, the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it."

Of course, if the evidence be so slight, or its probative force so weak, that it raises merely a "surmise or suspicion" of the existence of the facts sought to be established, then the testimony given falls short of being "any evidence," as stated by Justice Denman, in the well-known case, Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059.

We will review, substantially, the evidence developed at the trial, in order to apply the foregoing rules to the instant case. This evidence was to the effect that the original notes were signed by appellant for the purchase of stock in Southwest Security Company, a Nevada corporation, alleged to have a total authorized capitalization of $500,000, but with only approximately $1,000 of its stock subscribed, but not paid for, at the time it was authorized to do business in Texas; that appellant's purchase of this stock was induced by representations made to him by Guthrie, the president of the Southwest Security Company; that the stock in the Nevada corporation was sold to appellant by the appellee, Southwest Co., Inc., a Texas corporation; that Guthrie was likewise president of this, the appellee corporation; that Guthrie made representations as to the stock's value and its earnings, and assured appellant that these earnings would fully pay and discharge the purchase-money notes; that the purchase was of 100 shares of the preferred and 50 shares of the common stock for a total consideration of $10,000, represented by two promissory notes each for $5,000. Apparently, the quid pro quo, to rationalize an otherwise "something for nothing" proposition, was supplied by the subtle, though age-old, play upon appellant's lack of experience with high-powered stock salesmen by appealing to his vanity and representing to him that the Nevada corporation, through appellant's "influence" would gain new and profitable business in the good county of Mason, and for this reason he was specially sought out to be "favored" as a stockholder in this large, quick and easy-money making concern. The pièce de résistence was Guthrie's generous offer of appointment of appellant to the high-sounding position and designation as "Associate Member" of the "Board of Governors" of the great Nevada corporation. This prominent appointment, duly signed by the far-sighted Guthrie, was conveniently in Guthrie's pocket ready for immediate delivery upon receipt of the notes to be executed by appellant in case he accepted the nomination on the board of governors. At the time of the stock purchase and to induce same, appellant alleges, Guthrie exhibited a purported financial statement to appellant, in proof of its "sound financial status." On the trial it was developed that one of the principal assets of this great corporation shown on this statement was an item "organization—$50,-000." Upon examination, Guthrie finally admitted that this great "asset," in truth, represented merely an arbitrary write-up of this amount of the corporate assets for so-called "good-will" enjoyed by the Nevada corporation to the extent of $50,-000. The stock was sold to appellant by appellee corporation, and the two $5,000 notes were payable to the "order of appellant, signed by appellant, and endorsed by appellant"; but, of course, "delivered" to Guthrie, who gave appellant a receipt for the notes signed by Guthrie as presi-

dent of appellee corporation. The evidence showed that Guthrie was attorney in fact for Lloyd's Southwest Insurers, as well as president of both of these convenient corporations; that the two corporations and the Lloyd's organization all occupied the same suites of offices in San Antonio, using a common telephone, and were for all practical purposes each the alter ego and instrument of Guthrie in the plan of securing the "influence" of appellant, Kothmann, particularly in the beautiful and prosperous hill country of Texas.

The evidence further shows that the Nevada corporation failed to make the promised earnings; that the representations of value of the stock were not justified; and after a short while, Guthrie, overlooking appellant's "influence," began to call upon the new member of his board of governors for payments upon his notes; that the note here in question, payable to appellee, was for an original indebtedness of $5,000, and was to represent a credit of $2,500 applied upon the original stock purchase notes, and $2,500 to be applied as a subscription to an interest in Lloyd's Southwest Insurers, one of the related enterprises headed by Guthrie. Appellee showed that the original stock purchase notes had been transferred by it to the Nevada corporation, and contended that the note sued upon by it represented a "new and separate transaction" by it with appellant, under which appellee had advanced $5,000 to appellant for the above stated purposes. The evidence showed that no money passed hands; the transaction representing bookkeeping entries only, so far as appellant was concerned, although Guthrie employed the device of issuing two $2,500 checks, which appellant indorsed under Guthrie's direction. One of these checks, apparently, found its way into the coffers of the Nevada corporation, and the other into an alleged account of appellee, as agent for Lloyd's Southwest Insurers, in the now defunct Commercial National Bank of San Antonio. The testimony of Guthrie was to the effect that the Lloyd's organization was in a state of "status quo." Apparently he meant that it was defunct, or that no business was being done by this organization. This testimony is in singular contrast with the representations made to appellant when he was induced to execute the note sued upon, for at that time this Lloyd's organization

was represented as the "fast money making" enterprise of Guthrie's corporate children, a subscription in which would overcome or "hedge" the loss in promised earnings from the Nevada corporation which failed to materialize, the Nevada corporation apparently having also gone into a depression nose dive or tail spin which left it in another state of "status quo."

Apparently, the only real benefit, if any, enjoyed by appellant was his appointment as "Associate Member of the Board of Governors" of the Nevada corporation with headquarters at the well-known city of Reno. Appellant permitted the stock certificate representing his purchase of stock in the Nevada corporation to be retained by it as collateral security for the payment of the stock purchase notes. There was evidence to the effect that appellant's stock was, or was to be, used as collateral to be deposited with the insurance commissioner of the state of Texas in connection with appellant's subscription in the Lloyd's organization, but the stock-purchase lien was not released, though apparently subrogated for this purpose. The evidence showed that appellant executed the original notes for $10,000, and the later note for $5,000, and paid, in cash, on account of the notes some $1,200. This cash and all these obligations executed by appellant were received by Guthrie and used by him or some of the several corporations or concerns operated by him, apparently in accordance with his plans, to all of which appellant assented.

Appellant admits having executed the note in question, and that except for the credits thereon as shown, it is past due and unpaid. The record before us shows that appellant participated in the series of transactions and manipulations above described; that he relied upon the "trade talk" of Guthrie as Guthrie "puffed and boosted" his goods and wares in the form of stocks and investments as enumerated; that if these investments had produced the long, quick returns as represented by Guthrie and contemplated by Kothmann, then all concerned would have been content, and appellant, as he testified, would have been glad to receive the expected large and quick profits. The record reveals, however, as above indicated, a sad story of a voluntary investment by a man of responsibility and mature judgment in

get-rich-quick schemes, many of which were in circulation just prior to and as a part of the "great depression."

This court is confronted and concerned, as was the trial court, with the facts in the case as shown by the record and the rules of law applicable thereto. Through the introduction in evidence of the note and the testimony of appellant himself, when called as a witness by his adversary, appellee made its case, and it was and is entitled to judgment as pleaded against appellant, unless some of the claimed defenses asserted by appellant are valid. We, therefore, give consideration to each defense and contention made by appellant.

Appellant's assignments of error may be classed into three separate groups. The first group charges generally, and in particular, that the trial court erred in failing to submit to the jury various and asserted issues of fact constituting the component parts of the alleged defense of fraud. In the second place it is contended that the court erred in refusing to permit certain witnesses to testify as to similar transactions between them and Guthrie, and representations made by Guthrie to them, and similar to the representations alleged by appellant. The third group consists of the assignments relating to alleged failure of consideration.

■ It is our conclusion that the trial court did not err in refusing to submit to the jury issues relating to fraud or conspiracy to defraud. The appellant's theory of conspiracy to defraud, in so far as this suit is concerned, is not a conspiracy. This is not a criminal action; and Guthrie and Southwest Securities Company are not parties to the suit. Appellant's defense under this contention is in the nature of a counterclaim for fraud and deceit, based on fraudulent representations of appellee in the sale to appellant of 150 shares of stock. Appellant does not attempt, either by pleadings or proof, to establish the difference between the true value of the stock and its value as represented by appellee. Appellant, on the other hand, seems to contend that the fraud may be pleaded as a defense to an action on a note, without its being asserted in the form of a counterclaim or offset. Appellant takes this position obviously for the reason that his alleged cause of action for fraud occurring on or about June 22, 1929, would be barred by the statute of limitations pleaded by appellee. The plea of fraud was first set up by appellant in his third amended answer, filed June 19, 1934. Appellant admitted that he discovered the alleged fraud in the summer or fall of 1931. Article 2017, R.S.1925, provides in part: "If the suit be founded on a certain demand, the defendant shall not be permitted to set off unliquidated or uncertain damages founded on a tort or breach of covenant on the part of the plaintiff."

■ Fraud cannot be pleaded as a defense to a note on the ground that it amounts to a failure of consideration. Fraud is in its essence a tort; while failure of consideration ordinarily involves no actionable wrong, but occurs by reason of accident or mistake. Whereas the statute of limitations will effectively bar all rights growing out of an alleged fraud, the defense of absence or failure of consideration, in whole or in part, may be asserted at any time, without regard to the statute. Smith v. Fairbanks, Morse & Co., 101 Tex. 24, 102 S.W. 908; Binder v. Millikin (Tex.Civ.App.) 201 S.W. 239.

■ There is included in appellant's third amended answer a plea of failure of consideration, duly verified as required by article 2010, R.S.1925. The refusal of the trial court to submit this question to the jury is assigned as error. The note in question having been issued by appellant to appellee, the payee therein, and having never been negotiated, is subject in the hands of appellee, to all the defenses of a nonnegotiable instrument (including the defense of failure of consideration), and appellee is not a holder in due course, as that term is defined in the Negotiable Instruments Act (Vernon's Ann.Civ.St. art. 5935, § 59). J. I. Case Threshing Machine Co. v. Howth, 116 Tex. 434, 293 S.W. 800, syl. 5; Southwest Contract Purchase Corporation v. McGee, 120 Tex. 240, 36 S.W.(2d) 978. The only fact question involved in this plea is whether or not appellee actually advanced for appellant's account the $5,000 covered by the note dated April 4, 1930. $2,500 represented by this note was to have been applied to appellant's subscription in Lloyd's Southwest Insurers, and the other $2,500 to have been paid on account of one of the original $5,000 notes, then in the hands of the Southwest Securities Company. The circumstances surrounding the activities of Guthrie in regard to the transaction between appellant and appellee, as disclosed by the record, are not above suspicion.

The appellee, Southwest Co., Inc., the Southwest Securities Company and Lloyd's Southwest Insurers were all located in the same offices in the Travis building, in San Antonio, used the same telephone, and Guthrie, as president of the two corporations and attorney in fact for Lloyd's Southwest Insurers, apparently used the separate corporations for his own purposes. It is rather interesting to note that, although the two original notes for $5,000 each were secured by a lien on the 100 shares of preferred, and 50 shares of common stock of Southwest Securities Company at the time they were issued and delivered by appellant to appellee, that thereafter, appellee transferred the two notes to Southwest Securities Company, and on or about April 30, 1930, Guthrie obtained this identical security and used it to pay appellant's subscription to the Lloyd's Southwest Insurers. The Southwest Securities Company, obviously, lost the collateral which it held as security for the original two notes for $5,000 each; but appellant cannot be heard to complain of this, because he got the benefit thereof. These matters, however, can have no bearing on the plea of failure of consideration as to the note sued on. If appellant got credit for the full $5,000 represented by the note, he cannot sustain his plea of failure of consideration. If, on the other hand, appellee actually paid out only $2,500 in consideration for the $5,000 note, dated April 4, 1930, then appellant would be entitled, under his plea of partial failure of consideration, to a deduction of $2,500 from the note sued on. Blanks v. Ripley, 8 Tex.Civ.App. 156, 27 S.W. 732; Cook v. Barrier (Tex.Civ.App.) 73 S.W.(2d) 623.

The note in question, being negotiable in form, imports a consideration; and when appellee introduced it in evidence, it established a prima facie case against appellant. Article 5933, § 24, R.S. 1925. In addition, and as above stated, appellant admitted that he had executed and delivered the note to appellee, and that it had not been paid. The plea of failure of consideration, although verified, does not overcome the prima facie case established by the introduction in evidence of a promissory note by the holder, and the person filing such plea has the burden of proving it by a preponderance of the evidence. 6 Tex.Jur. § 300, page 987; Newton v. Newton, 77 Tex. 508, 14 S.W. 157; article 574 and article 5933, § 28, R.S. 1925.

We are fully aware of the now well-established rule "that when a jury has been selected for the purpose of trying out the facts of a case, it matters not how positive and uncontradicted the testimony of an interested party may be; the question of his credibility must be submitted to the jury." Thraves v. Hooser (Tex.Com. App.) 44 S.W.(2d) 916, at page 921. But, we have searched the record in vain to find any evidence that would raise or support an issue of fact as to whether or not appellant received credit for $5,000 represented by the note dated April 4, 1930. Viewing the testimony in the light most favorable to appellant, and applying the rules of law above announced, we cannot say that the evidence raises any fact issue on this question, even though the testimony of Guthrie be wholly disregarded, or the parts thereof most favorable to appellant, be considered exclusively. This being true, it follows that appellee is entitled to judgment on the prima facie showing made by the introduction in evidence of its note, and the court below committed no error in so instructing the jury.

A most careful review of the entire record in this cause reveals a series of transactions, some of which strongly indicate that appellant has been led into obligations which now apparently present hardships which border on injustice. Appellant, however, exercised his right and privilege of contract in the various deals he made with appellee, and he has not, in this case, pointed out any error in the trial of the issues raised by the pleadings.

The judgment of the trial court will therefore be affirmed.