## GREENWAY et al. v. GREAT ATLANTIC & PACIFIC TEA CO.

### No. 1704.

Court of Civil Appeals of Texas. Eastland.

Feb. 25, 1938.

Kirby, King & Overshiner, of Abilene, for plaintiffs in error.

Russell & Russell, of Baird, and Touchstone, Wight, Gormley & Price, of Dallas, for defendant in error.

GRISSOM, Justice.

This is a companion case to Great Atlantic & Pacific Tea Co. v. Walker, Tex. Civ.App., 104 S.W.2d 627; Walker v. Great Atlantic & Pacific Tea Co., Tex.Sup., 112 S.W.2d 170.

In this case, J. L. Greenway, for and on behalf of himself and his wife, and as next friend of his two minor sons, sued the defendant for damages, alleged to have been caused by ptomaine or food poisoning, suffered by plaintiffs as a result of eating canned corn, sold by the defendant to Hoyt Walker. The answer of the jury on controlling questions was in favor of the defendant. Judgment was entered for the defendant, from which judgment plaintiffs have appealed.

Special issue No. 4, and the jury's answer thereto, are as follows: "Do you find from a preponderance of the evidence that the defendant herein, Great Atlantic & Pacific Tea Company, failed to use ordinary care to avoid putting on the market for sale canned corn unfit for human consumption as food? Answer: It did not fail to use ordinary care." Plaintiffs' motion requesting the court to instruct a verdict, except as to the amount of damages, was refused. Plaintiffs, by their assignments of error, contend: (a) That the evidence relative to issue No. 4 was insufficient to warrant the submission thereof to the jury; (b) that the answer of the jury is without evidence to support it; and (c) that the finding of the jury is so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

Mr. Call, manager of defendant's purchasing department for the Dallas unit, which included the Baird store where the corn was sold, testified that the canners from whom the defendant purchased corn enjoyed a good reputation. "That they are reputable concerns." That they have "very good standings." He testified that the canner of the particular corn purchased by Walker was the Keene Canning Company; that its general reputation was good; that it was a reputable manufacturer and processor. He further testified that when a car of canned corn was purchased and shipped to the Dallas warehouse, upon its arrival he instructed the employees to bring several cans from different parts of the car; that

the cans were opened; that he smelled and tasted the corn from such cans and inspected it to ascertain if it contained foreign elements; that the corn was then placed on the third floor of the company's warehouse, the third floor not being the top floor of the warehouse, where the temperature remained fairly even. There was also testimony to the effect that at the Baird store, where the corn in question was sold, the local manager and his wife inspected the cans when they were placed on the shelves for sale, and again when it was sold and wrapped for the customer and paid for. That the temperature in the retail store was kept "about normal." That the manager, or his wife, handled every can at least twice; that the canned goods were inspected; that if a "rusty or a can that was swollen or a can that is leaky" is found the can is punctured and separated from the stock exposed for sale. We think with such testimony in the record it cannot be said that it was shown, as a matter of law, that the defendant failed to use ordinary care in the particular mentioned in issue No. 4, or, in other words, that negligence, as a matter of law, is shown. If we are correct in this conclusion, the opinion might well end here for the reason that if the finding of the jury that the defendant was not negligent is sustained by the evidence, then the plaintiffs cannot recover and the judgment should be affirmed. However, we shall briefly discuss the other contentions presented.

Special issue No. 3 and the answer thereto are as follows: "Do you find from a preponderance om the evidence in this case that the canned corn purchased by Hoyt Walker from the defendant herein, the Great Atlantic and Pacific Tea Company, was unwholesome and unfit for human consumption as food? Answer: No." In answer to special issues Nos. 13, 14, 15, and 16, the jury found that eating the corn in question was not the proximate cause of the plaintiffs' illness. In answer to issue No. 17 the jury found that plaintiffs' illness was proximately caused by other food than the corn in question. With reference to the answers to questions Nos. 3 and 17, plaintiffs assign as error: (a) That the evidence with reference thereto is insufficient to warrant submission of said issues to the jury; (b) that the findings of the jury in answer to said issues are without evidence to support them; and (c) that the findings of the jury in answer to said issues are so contrary to the great weight and preponderance of the evidence as to be clearly wrong. Plaintiffs also assign as error the action of the court in overruling plaintiffs' motion for a peremptory instruction.

It must be remembered that the evidence as to what was eaten, etc., immediately preceding the illness of the plaintiffs and the Walkers, came from the plaintiff, Mr. Greenway, and his wife, and Mr. and Mrs. Walker, plaintiffs in a companion case against the same defendant, involving the same can of corn. By process of elimination plaintiffs attempted to show that the corn was necessarily the article eaten that caused their illness. In other words, they attempted to show that all of the members of both families became ill immediately after the dinner at which this corn was served; that all of the sick persons ate corn; and that some of the persons who became sick failed to eat each of the articles other than corn served on that occasion.

In Pope v. Beauchamp, 110 Tex. 271, 280, 219 S.W. 447, 450, our Supreme Court said: "Bearing in mind the rule clearly enunciated by this court, speaking through Judge Brown, in the case of Houston, E. & W. T. Ry. Co. v. Runnels, 92 Tex. [305] 307, 47 S.W. [971] 972, that 'it is the province of the jury to pass upon the credibility of the witnesses, and they may disregard the testimony of a witness who has neither been impeached nor contradicted, if they believe his statements to be untrue from his manner of testifying, prejudice exhibited towards the opposite party, or his interest in the result of the litigation, or other things indicating that the evidence is not reliable,' we have concluded that it was a question of fact, for the jury to determine, as to whether plaintiff in error was a bona fide holder of the note. See, also, Pridgen v. Walker, 40 Tex. [135] 136; Crosby v. Church, 45 Tex.Civ.App. 111, 99 S.W. [584] 587; Burleson v. Tinnin [Tex.Civ.App.] 100 S.W. [350] 351; First Nat. Bank of Ft. Wayne v. Howard [Tex.Civ.App.] 174 S.W. [719] 720."

In Thraves v. Hooser, Tex.Com.App., 44 S.W.2d 916, 921, opinion by Justice Sharp, it was said: "The rule is now well settled in this state by the decisions of the Supreme Court that when a jury has been selected for the purpose of trying out the facts of a case, it matters not how positive and uncontradicted the testimony of an interested party may be; the question of his credibility must be submitted to the jury."

Also see Mills v. Mills, Tex.Com.App., 228 S.W. 919, 920; American Surety Co.

v. Whitehead, Tex.Com.App., 45 S.W.2d 958, 960; Stone v. Wylie, Tex.Com.App., 34 S.W.2d 842, 845; Moore v. Conway, Tex. Civ.App., 108 S.W.2d 954, 958.

Bearing in mind, as heretofore stated, that the evidence with reference to the cause of the illness of the parties came from the Greenways, who were seeking recovery of damages in this suit, and the Walkers, who were seeking recovery of damages with reference to the identical transaction in a companion case, and applying to said testimony the rules laid down in the authorities hereinbefore cited, we call attention briefly to the testimony of some of the witnesses. The evidence shows that there was served at the dinner at Walkers' where the parties became sick the following articles: Corn, salmon, biscuit, corn bread, water, custard, and cake. The evidence further shows that milk and fried meat grease were used in the preparation of the dinner. There was evidence that the corn in question looked, smelled, and tasted "all right" and that there was nothing wrong with the appearance of the can. A physician testified that if the corn had been fried for fifteen minutes, the germ causing the illness would have been killed. There was testimony to the effect that the corn was fried for fifteen minutes. There was evidence that the small baby of the Greenways, being less than two years old, was fed some of this fried corn, and that this baby was less sick than the others.

Plaintiff J. L. Greenway testified that he ate some of everything, except the pie. Mrs. Walker testified:

"Q. Did Mr. Greenway eat any salmon? A. No sir.

"Q. You know that? A. Yes sir."

Mrs. Greenway testified:

"Q. Of the food that was there, did Mr. Greenway eat of all of the food which was there? A. All of it, and I think custard pie we had."

There was evidence that the germ that causes food, or ptomaine, poisoning could live in canned salmon, vegetables, and meats generally, and in milk. A physician testified that he did not know whether the germ could live in impure grease.

The evidence showed that Mr. Walker testified on the trial of his case against the defendant that on the day before the dinner at which the parties became ill he purchased a can of corn and a can of salmon from the defendant. We quote briefly from his testimony in the instant case:

"A. Well, it was. I just said sardines —I know I bought sardines or salmon one.

"Q. So you just picked out salmon and testified? A. Yes sir.

"Q. Now, today you are testifying it was sardines? A. Yes sir.

"Q. That's right? A. Yes sir. * * *

"Q. So you have changed your testimony, haven't you? A. Yes sir.

"Q. Well, now you paid 13 cents for that can of corn you got didn't you? You testified to that over in Judge King's office? A. Yes sir.

"Q. Is that right? A. No."

The petition alleges the purchase of the corn on March 24, 1935. The evidence shows that it was eaten the following day. Mr. Walker testified, in substance, that on the afternoon of the day the corn was eaten he fed that portion of the corn not consumed by the people to his cat and the cat died. He did not testify to this fact upon the trial of his case. He testified in this case about the 20th day of November, 1935, and he said that he had never told his counsel about the cat dying from eating this corn "until yesterday."

We have pointed out brief portions of the testimony heretofore, not for the purpose of showing that any of said testimony was necessarily false, but in an endeavor to apply the facts of the case to the law as laid down in the authorities heretofore quoted from. Certainly, under such circumstances, it is the province of the jury to pass upon the credibility of witnesses and they may disregard the testimony of a witness, whether impeached or contradicted, or not, "if they believe his statements to be untrue from his manner of testifying, prejudice exhibited towards the opposite party, or his interest in the result of the litigation, or other things indicating that the evidence is not reliable." Houston, E. & W. T. Ry. Co. v. Runnels, 92 Tex. 305, 307, 47 S.W. 971, 972.

Under the facts and circumstances of this case, we think the trial court correctly refused to instruct the jury to return a verdict for plaintiffs and that the answers to the questions referred to were matters for the determination of a jury, and further that their answers to questions submitted find support in the testi-

mony. Houston Packing Co. v. Dr. S. O. Benson, 114 S.W.2d 429, decided by this court February 18, 1938; Goodrich v. Pandem Oil Corporation, Tex.Com.App., 48 S.W.2d 606, 609; Clem v. Fulgham, Tex.Com.App., 14 S.W.2d 812, 813; Harpold v. Moss, 101 Tex. 540, 542, 109 S. W. 928; Yturria v. Everton, Tex.Civ. App., 4 S.W.2d 211, 212; King v. Porter, Tex.Civ.App., 256 S.W. 627, 629; Keton v. Silbert, Tex.Civ.App., 250 S.W. 316, 318.

On the question of whether there is support in the evidence for the answer of the jury to the special issues mentioned, we call attention to the rule laid down by the Supreme Court in Wininger v. Ft. Worth & D. C. Ry. Co., 105 Tex. 56, 58, 143 S.W. 1150, as follows: "If discarding all adverse evidence and giving credit to all evidence that is favorable to the successful party and indulging every legitimate conclusion that is favorable to him, a jury might have found in his favor, then it is to be concluded there is evidence to support the verdict." Four States Grocery Co. v. Gray, Tex.Civ.App., 97 S.W.2d 355, 359; Buchanan v. Davis, Tex.Com.App., 15 S.W.2d 562; Texas Drug Co. v. Cadwell, Tex.Civ.App., 237 S.W. 968; Transcontinental Ins. Co. v. Greenwood, Tex.Civ.App., 90 S.W.2d 1114, 1115; Kothmann v. Southwest Co., Inc., Tex.Civ.App., 92 S.W.2d 272, 274; 17 Tex.Jur. § 418, p. 926.

The judgment of the district court is affirmed.