## LYON & RICE, RECEIVERS, V. T. S. B. BEDGOOD.

### Decided February 16, 1909.

**1.—Trial—Distinct Submission of Defense.**

A party is entitled, when he requests it by proper instructions, to have the facts establishing his cause of action or ground of defense and the law applicable to them, affirmatively stated by the court to the jury. In an action for damages for personal injuries received while working in a saw mill, the refusal of the court to give certain charges requested by defendants, held, reversible error under the foregoing rule in view of the pleading, evidence and main charge of the court.

**2.—Evidence—Negligence—General Use of Appliance.**

While evidence of the general use of a certain appliance by other persons engaged in the same business is admissible upon the issue of ordinary care, it is not conclusive of the question, and will not warrant an instruction to the jury to that effect. In an action based upon negligence it is always a question

for the jury under the facts of each case whether or not there has been an absence of ordinary care.

**3.—Measure of Damage—Elements—Charge.**

An instruction on the measure of damages to allow compensation for mental and physical suffering past and future, and also for diminished capacity to labor and earn money in the future, did not authorize the assessment of double damages.

Appeal from the District Court of Harris County. Tried below before Hon. W. P. Hamblen.

*Andrews, Ball & Streetman* and *Baker, Botts, Parker & Garwood,* for appellants.—It is a well established rule of law that the defendant is entitled to have its theory of the case affirmatively presented, and it is error to refuse special charges so presenting these defenses. Railway v. Hall, 85 S. W., 790; Railway v. Ayres, 83 Texas, 269; Railway v. Conn, 100 S. W., 1019; Railway v. McGlamory, 89 Texas, 639.

The court erred in refusing defendants' special charge No. 4, which is as follows:

"The jury is instructed that if the equipment and operation and use by the defendants, at the time of the injury to plaintiff, was that which is in general use amongst reasonably prudent persons engaged throughout the country in the same character of business, then the defendants exercised that degree of care required of it by law with reference to such matters, and the plaintiff can not recover, and your verdict should be for the defendant." Railway v. Thompson, 33 S. W., 718; Railway v. Gormley, 27 S. W., 1051; Railway v. Garrett, 73 Texas, 265; Railway v. Bell, 75 Texas, 50; Beckman v. Brewing Co., 72 S. W., 710; Railway v. Cowser, 57 Texas, 293; Nix v. Railway, 82 Texas, 473; Harley v. Mfg. Co., 142 N. Y., 35; Railway v. Propst, 83 Ala., 526; Titus v. Railway Co., 136 Pa. St., 626; Roberts v. Canal Co., 35 Atl., 723; Bering Co. v. Peterson, 67 S. W., 134.

Plaintiff having alleged that the accident was due to the absence of a jam nut, must be confined for his recovery to these specific allegations, and if it was due to other causes no recovery could be had, and the jury should have been so instructed. Johnson v. G., H. & N. Ry. Co., 66 S. W., 906; Railway v. Hennessey, 75 Texas, 155; Railway v. Younger, 10 Texas Civ. App., 142.

The measure of damages, as stated in the charge, is erroneous because it allows a double recovery, in this: The jury is instructed to compensate him for physical pain and mental suffering as from the evidence they may believe plaintiff has suffered, and such further alleged physical pain and mental suffering which plaintiff may in the future reasonably and probably suffer from his injuries, and also for his decreased or diminished ability to earn money after arriving at twenty-one years of age. Certainly, physical pain and mental suffering would cause a decreased or diminished ability to earn money, and allowing full compensation for future physical pain and mental suffering, and also for future diminished ability to earn money, is allowing double recovery. Railway v. McGraw, 43 Texas Civ. App., 247; Railway v. Nesbit, 40 Texas Civ. App., 209; Railway v. Anglin, 86 S.

W., 785; Railway v. Hannig, 91 Texas, 347; Railway v. Brock, 31 S. W., 500; Railway v. Smith, 63 S. W., 1067; Railway v. Butcher, 98 Texas, 462.

*Parker, Hefner & Orgain* and *Fisher, Sears & Campbell,* for appellee.

REESE, ASSOCIATE JUSTICE.—This is a suit by appellee, suing by his next friend, against appellants to recover damages for personal injuries received by him, while engaged in the performance of his duties, in their employment. Upon trial with a jury plaintiff recovered judgment for $10,000, from which defendants appeal.

Briefly stated, the allegations of the petition are, in substance, that appellee, while engaged in the discharge of his duties in the employment of appellants at their sawmill plant in the capacity of block setter, had taken his place on the carriage used in carrying logs to the saw, when said carriage became unmanageable and "ran away," that is, moved at an unusual and uncontrollable rate of speed until suddenly stopped by an obstruction which caused appellee to be violently thrown from the carriage, inflicting upon him serious and permanent injuries. It was charged in the petition that the accident was caused by the parting of the connection between the lever, by means of which the sawyer regulated the movement of the carriage, and the steam valve, whereby the sawyer was unable to stop the carriage or regulate its speed after it started. It was alleged that this parting between the lever and steam valve was caused by the absence of a jam-nut at one end of the turnbuckle, which formed a part of this connection, by reason of which it worked loose, or the rod inserted in one end of the turnbuckle unscrewed or worked out.

It was further charged that the connection referred to was not suitable for the purpose for which it was being used, but was of poor construction, improperly equipped, as hereinabove set forth, and was old and worn to an extent that made it defective and unfit for use, and rendered it easy for the parts to work loose, all of which could have been discovered by the exercise of reasonable care, and that appellants and their agents in charge and control of the work did have knowledge of this condition prior to the accident.

Defendant pleaded general denial, that if appellee's injuries were caused by any defect in the machinery, such defects were latent and could not have been discovered by the use of ordinary care; that if such defects were open and patent, as alleged in the petition, appellee assumed the risk incurred. Defendant further pleaded negligence of fellow servant and, as to the extent of appellee's injuries, alleged that they had been aggravated by his negligence and inattention.

The evidence introduced by appellee tended to establish the theory that while he was riding upon the carriage, the movements of which were controlled by the sawyer by means of an upright lever, whereby he operated the connection with the steam valves referred to in the petition, the connection between the lever and the steam valves separated or parted, by which the sawyer lost control of the carriage, that is, could not shut off the steam which had been applied for the purpose

of moving the carriage up to the saw. The carriage, the movement of which had thus become uncontrollable, ran violently against a bumper, throwing appellee off and injuring him.

Up to this point the evidence of appellants and appellee does not differ. The difference is as to the cause of the parting of the connection between the lever and the steam valves. This connection was made by the use of two rods, the ends of which were connected together by an implement known as a "turnbuckle." This implement can be described as two nuts connected by parallel bars. The ends of one of the rods had right-hand threads and the other left-hand threads, and the two nuts, at opposite ends of the turnbuckle, which was a solid piece, had likewise one right-hand threads and the other left-hand threads, so arranged that by screwing the turnbuckle on the two rods they would be drawn together. If turned one way, the turnbuckle would screw entirely off, if turned the other way, it would screw up on both rods. A jam-nut, or clinch-nut, is a nut that screws on the rods at the end of the turnbuckle, and being tightened up against the end of the turnbuckle, served to prevent it from unscrewing, or to render it more difficult for it to do so, by any motion imparted to it. The purpose of the turnbuckle is to shorten or lengthen the connection.

Appellee's evidence tended to show that at the time in question the turnbuckle, of itself, became unscrewed or screwed off one of the rods, and separated from it, thus severing the connection between the lever and the steam valves, and that there was no breakage of the rod. His evidence further tended to show that there was only one jam-nut on the rods; that there should have been two, one at each end of the turnbuckle, and that if there had been two they would have prevented the turning of the turnbuckle on the rod and kept it fast, and that the failure to have the two jam-nuts, of which, it is alleged, appellants had actual knowledge, was negligence, and was the proximate cause of the accident. Appellee's evidence further tended to show that appellants' agents in control of the mill had been advised that the use of only one jam-nut rendered the machinery unsafe.

The evidence of appellants tended to show that there was no unscrewing of the turnbuckle, but that one of the rods broke, outside of and next to, one end of the turnbuckle, leaving a part of the rod about ¾ or ⅝ of an inch in the turnbuckle, and this break in the rod was caused by a hidden defect therein, which could not have been discovered by reasonable care or diligence on their part.

Thus the case as presented by appellee in the evidence was that the parting of the connection was solely caused by the unscrewing of the turnbuckle, caused by the absence of the jam-nut, there being no breaking of the rod; and the case as presented by appellants was that the parting was caused by the breaking of the rod outside of the turnbuckle, with which the absence of the jam-nut had nothing to do. If due to this cause the evidence tended to show that the break was caused by a latent defect in the rod, not discoverable by ordinary care. If the rod broke, as testified by appellants' witnesses, such breaking was the sole cause of the accident.

In this state of the evidence the court, upon this issue, charged

the jury to find for the defendants "if·plaintiff's injuries were caused by a latent defect, that is, such a defect as the master, by a proper inspection could not have discovered."

Appellants requested the two following instructions: "The jury is instructed that if the·running away of the carriage, described in plaintiff's petition, and the injury that plaintiff sustained on account thereof was due to the breaking of any portion of the carriage or its equipment, but if the defect, if any, causing said breakage was latent and could not have been discovered by the defendants in the exercise of ordinary care in the discharge of their duty, then defendants can not be charged in law with negligence on account of such defect, if it really existed, and under such circumstances your verdict should be for the defendants."

"If you believe from the evidence that the accident and injury to the plaintiff was caused by a breakage of any part of defendants' machinery and equipment; yet, if you believe, in the exercise of ordinary care in inspecting said machinery and equipments, the defendants could not have discovered any defects in said machinery or equipment which would have been reasonably calculated to cause it to break or separate, then the plaintiff can not recover herein, and your verdict will be for the defendants."

These instructions the court refused to give, and the refusal is made the basis of the first two assignments of error.

Objection to these charges is made by appellee on the ground, first, that the matter is sufficiently covered by the sixth and eighth paragraphs of the court's charge. The sixth paragraph contains only a general definition of the term "latent defects." The eighth paragraph, so far as it refers to this matter, only instructs the jury in general terms to find for the defendants if the injury "was caused by a latent defect." It is further objected that the requested instructions ignored actual knowledge on the part of appellants. Neither of these objections to the charges is sound. The charge of the court on this issue was sufficient in the absence of a request for a more specific charge, but did not affirmatively apply the law to the specific facts relied upon by appellants and shown by the evidence. By the term "latent defect" the jury may have understood that reference was made to the absence of the jam-nut, which was so prominent a portion of the plaintiff's case. The defendants' evidence presented the issue of the breaking of the connection and that such breaking was caused by a latent defect in the piece that was broken. Appellants had the right, by requesting a proper charge to that effect, to have the attention of the jury specially directed to the.facts upon which they predicated their defense. The court had, in presenting the appellee's side of.the case, specially directed the attention of the jury, by reference to the petition, to the facts relied upon by him to establish negligence, and had not simply charged the jury to find for plaintiff if the injuries were received as a proximate consequence of the negligence of appellants. Appellants had a right to have their defense presented in the same way. The rule is thus stated by the Supreme Court in St. Louis S. W. Ry. v. Hall, 98 Texas, 480. · "A party is entitled when he requests it by correct instructions to

have the facts establishing his cause of action or ground of defense and the law applicable to them, affirmatively stated by the court to the jury. It is a settled rule of practice established by many decisions of this court."

This rule has been many times announced by our Supreme Court and by various decisions of the Courts of Civil Appeals, and has become a settled rule of practice. Railway v. Hall, *supra;* Texas Trunk Ry. v. Ayres, 83 Texas, 269; Missouri, K. & T. Ry. v. McGlamory, 89 Texas, 639; Missouri K. & T. Ry. Co. v. Rogers, 91 Texas, 58; Dublin Cotton Oil Co. v. Jarrard, 91 Texas, 293; St. Louis S. W. Ry. Co. v. Casseday, 92 Texas, 526.

The objection that the charges requested ignored the actual knowledge of appellants, is not tenable. While there was evidence of the actual knowledge on the part of appellants of the absence of the jam-nut, there was none of any defect in the iron rod, the breaking of which, according to the testimony of appellants' witnesses, caused the accident. If the objection is made to the requested instructions that they present the issue of the breaking of the rod as the sole cause of the accident and leave out of consideration the combined effect of this with other causes, it may be answered that none of the evidence presents such issue. According to appellee's evidence there was no break, but a coming loose occasioned by the absence of the jam-nut. According to appellant's evidence there was no coming loose or unscrewing of the turnbuckle, but a breaking of the rod with which the absence of the jam-nut had nothing to do. None of the evidence tended to show a combination of the jam-nut or any other cause, with the breaking in causing the accident. If the breaking occurred, it was clearly the sole cause of the accident and the jam-nut had nothing to do with it. We think the general charge No. 2 referred to in the assignment of error should have been given. Special charge No. 3 covers substantially the same ground. It would not have been necessary or proper to give both of them.

There was no error in refusing to give the requested instruction that if the equipment used by defendants was such as was in general use among reasonably prudent persons engaged in the same business, defendants were in the exercise of ordinary care in using it. We do not think this is the rule in this State. Evidence of such use by other persons engaged in the same kind of business is admissible upon the issue of ordinary care, but the question at last is whether, under the facts of the particular case, there has been an absence of ordinary care. (Gulf, C. & S. F. Ry. Co. v. Smith, 87 Texas, 358; Kirby Lumber Co. v. Dickerson, 42 Texas Civ. App., 504). The third assignment of error presenting the point is overruled.

Appellants requested the court to charge the jury that if the breakage was caused by the way the carriage was handled, or was due to a breaking of the rod from any other cause than the absence of a jam-nut, plaintiff could not recover. This charge was refused and the refusal is made the basis of the fourth assignment of error. As to the first part of this charge, there is no evidence of any want of proper care in handling of the equipment by the sawyer. We are referred to none in appellants' brief in the statement under the as-

signment. We find in the record the statement of the witness Pope that "nothing except rough usage in handling the lever could have broken this connection." This statement alone did not raise the issue of want of ordinary care in handling the equipment as causing the injury. This part of the charge being incorrect was sufficient grounds for rejection of the whole. In view of the allegations of the second count of the petition, vague and indefinite, however, as to the age and condition of the equipment generally, of which there was some evidence, it would have probably been improper to give the latter part of this instruction. If the parting of the connection was caused by the breaking of the rod on account of the age or general unfitness of this part of the equipment, and not to the absence of the jam-nut, we think it would come within the allegations of the second count of the petition. This disposes also of the fifth assignment of error.

The sixth assignment of error cannot be sustained. To instruct the jury, on the measure of damages, to allow compensation for mental and physical suffering, past and future, and also for diminished capacity to labor and earn money in the future did not authorize the assessment of double damages. The case of International & G. N. Ry. v. Butcher (98 Texas, 462), relied upon by appellants, does not support their contention. In that case the holding was that to allow the plaintiff compensation for impaired mental and physical health and also for diminished capacity to labor and earn money would be to allow double damages. In Missouri, K. & T. Ry. Co. v. Nesbit (40 Texas Civ. App., 209), also cited by appellants, it was held that to allow compensation for diminished capacity to earn money and also pursue the course of life which the plaintiff might have done, authorized the assessment of double damages. In Texas & N. O. Ry. Co. v. McGraw (43 Texas Civ. App., 247), also cited by appellants the charge objected to was approved, in so far as it embraced the elements of the charge here objected to. In Industrial Lumber Co. v. Bivens (47 Texas Civ. App., 396) a charge almost identical with the charge given in the present case was approved by the Court of Civil Appeals of the Fourth District. (Writ of error refused.) We are clearly of the opinion that mental and physical suffering, as elements of damage in this class of cases, does not cover any part of the same ground covered by diminished capacity to labor and earn money. Each is an independent element of damage.

As the judgment must be reversed on another ground, it is not necessary to pass upon the seventh and eighth assignments of error presenting the objection that the amount of the judgment is excessive.

For the error indicated in the first and second assignments of error the judgment is reversed and the cause remanded.

*Reversed and remanded.*