JORDAN et al. v. CITY OF LUBBOCK.
No. 4181.

Court of Civil Appeals of Texas. Amarillo.
Nov. 4, 1935.

Rehearing Denied Dec. 2, 1935.

Bledsoe, Crenshaw & Dupree, of Lubbock, for appellants.

E. L. Klett, of Lubbock, for appellee.

HALL, Chief Justice.

The appellants, Jordan and wife, the parents of Nat Jordan, joined by Lucille Jordan, sued the city of Lubbock to recover damages alleged to have resulted to them on account of the death of Nat Jordan, hereinafter called "deceased," occasioned by the negligence of the city.

The substance of the allegations is that about May 23, 1932, the city maintained and operated a municipal light plant, and on said date negligently permitted one of its wires, carrying a dangerous voltage of electricity, to fall into and upon the premises occupied by appellants and the deceased; that when the wire fell it came in contact with a wire fence surrounding certain portions of appellants' premises, thereby charging the fence wire with a dangerous voltage; that deceased went into appellants' back yard, and without knowing that the wire fence had become charged with electricity, came in contact with the wire and received a violent shock and burns which resulted in his death shortly thereafter. The city is charged with negligence which proximately caused the death of deceased in the following particulars:

(a) It failed to properly construct and maintain its wires at such point.

(b) It failed to exercise ordinary care to inspect its wires at that point.

(c) It failed to have proper instruments at its central station, such as an ammeter and ground detector and circuit breaker, which would have shown the location of the break in time to have cut the current off said wire before Nat Jordan was killed.

(d) That if it had such instruments, the city failed to keep them in proper repair and working order.

(e) That it had allowed the insulation on its said wire at such point to become worn and so defective as to permit the current to leak into the fence wire.

(f) That the city and its agents had actual knowledge of the breakage of the wire a sufficient time prior to the death of Nat Jordan to have cut off the current; that it not only failed to do so, but, with knowledge that the said Nat Jordan was in contact with such wire, failed to cut off the current and permitted Nat Jordan to remain on the wire, in contact therewith, for a period of almost one-half hour; and that the city's negligence in each of such respects was a proximate cause of the death of Nat Jordan.

Appellants further allege the giving of notice to the city; that Nat Jordan's health and earning capacity prior to the accident were good, and that he contributed to the support of his parents and his sister; and prayed for damages in the sum of $50,000.

The city answered by general demurrer, general denial, and specially pleaded that the breaking of the wire was due to an unusual and extraordinary windstorm and to lightning; that it did not know of any defects in its wires; that such defects, if any, were known to the appellants and they were negligent in not reporting same to the city and in not warning deceased; and appellants and deceased were guilty of contributory negligence in that they had wrongfully erected a wire for the purpose of inclosing a garden at the rear of their premises, and that said wire was off of said appellants' premises and partly out in the street (which was used for sidewalk) in such manner that it was dangerous and liable to cause any one to trip and fall upon it; that the curiosity of deceased was aroused and his attention was directed to the play of electricity on the ground, and that he thoughtlessly and heedlessly hurried to such place of danger, and in doing so tripped and fell across the garden wire and was thereby electrocuted, all of which was the result of the failure of appellants and deceased to use ordinary care under the circumstances.

It is further alleged that the night was dark and stormy, and that the deceased knew, or should have known, that the fallen electric wire was exceedingly dangerous, and with knowledge of such danger, and in defiance of warnings, he approached the dangerous premises, and that his negligence in such respect was a proximate contributing cause of the accident. They further allege that his death was the result of an unavoidable accident.

In response to special issues the jury found:

(1) That the city failed to exercise ordinary care in the maintenance of its wires.

(2) That such failure was a proximate cause of the death of the deceased.

(3) That the city knew of the break in its wires a sufficient length of time before deceased came in contact with the wire to have cut the current off.

(4) That an ordinarily prudent person would have cut the current off under the circumstances.

(4a) That the city failed to exercise ordinary care to cut off the current before deceased came in contact with it.

(5) That such failure was a proximate cause of the death of the deceased.

(6) That the city, after discovering deceased was in contact with the wire, could have, in the exercise of ordinary care, cut said current off sooner than it did.

(6a) That a person of ordinary prudence would, in the exercise of ordinary care, under the circumstances, have cut off the current sooner.

(6b) That the city, after discovering deceased was in contact with the wire, failed to exercise ordinary care in cutting off the current.

(7) That such failure was a proximate cause of the death of deceased.

(8) That the city had in its plant instruments and devices to detect and discover breaks in its wires.

(9) That such instruments, if in proper repair, would have discovered a break in the wire.

(10) That such instruments were in proper repair and working order on the occasion in question.

(11) That deceased was guilty of contributory negligence under all the circumstances.

(12) That such contributory negligence proximately caused or contributed to cause his death.

(13) That the death of deceased was not due to an unavoidable accident.

(14) That the breaking of the wire was not due to an unusual and extraordinary storm.

The jury assessed damages in favor of the father, B. T. Jordan, and the mother, Myrtle Jordan, each in the sum of $1,000, and awarded Lucille Jordan, a sister, the sum of $500.

No motion was filed by the appellee to set aside any of the findings of the jury or to render judgment in its favor non obstante veredicto; however, the court rendered judgment for the appellee, city, and against the appellants.

■ By the first proposition appellants contend that the jury having found that the city was guilty of negligence in the respects alleged in the petition, and having also found that the deceased was guilty of contributory negligence, yet having further found that the city discovered his perilous situation from coming in contact with the wire in time to have cut the current off, and that their failure to cut off the current after such discovery was negligence and was a proximate cause of the death, and no motion having been filed by the appellee city to enter judgment notwithstanding the verdict, or disregard as unsupported by the evidence any of such findings, the trial court was without authority to render judgment in favor of the appellee city, notwithstanding the verdict. We sustain this proposition.

The statute (Vernon's Ann.Civ.St. art. 2211) expressly provides that the court is without authority to enter judgment non obstante veredicto except upon motion and reasonable notice to the other side. In view of the condition of the record as to the other issues discussed, the action of the court in entering a judgment contrary to the verdict constitutes reversible error. Amarillo Transfer & Storage Co. v. De Shong (Tex.Civ.App.) 82 S.W.(2d) 381; Bell v. Henson (Tex.Civ.App.) 74 S.W.(2d) 455.

The next contention to be considered is that the evidence was wholly insufficient to show that the deceased knew that the appellee city's electric wire was down on the occasion in question, or that there was any danger to be apprehended from doing what he did, and, therefore, the finding of the jury that he was guilty of contributory negligence is wholly without support in the testimony. We sustain this proposition to this extent: The evidence was wholly insufficient to raise the issue of contributory negligence, and was not so conclusive as to support the verdict of the jury and the court's action in entering a judgment non obstante veredicto.

■ In all such cases the rule is that contributory negligence will not be pre-

sumed from the mere fact of accident or injury, and the burden is upon the defendant to prove contributory negligence. There is also a presumption that at the time of the injury the injured person was taking precautionary measures to prevent harm to himself, and in the absence of evidence to the contrary the assumption is that the injured party conducted himself with prudence, and used and exercised ordinary care in so doing. That contributory negligence cannot be presumed is established by numerous cases. Houston & T. C. Ry. Co. v. Pollock (Tex.Civ. App.) 115 S.W. 843; Id., 103 Tex. 69, 123 S.W. 408.

█ Where there is no testimony tending to show whether the injured party did or did not take precautionary measures to avoid injury, nevertheless the case should properly be submitted to the jury; Galveston, H. & S. A. Ry. Co. v. Watson (Tex. Civ. App.) 3 S.W. (2d) 921; and a judgment in favor of the plaintiff may be sustained under such circumstances upon the theory that, since there is no evidence to show that the injured party did not use ordinary care, it will be presumed that he did. Rio Grande, El Paso & S. F. Ry. Co. v. Lucero (Tex.Civ.App.) 54 S.W.(2d) 877.

In Salter v. Galveston, H. & S. A. Ry. Co. (Tex.Civ.App.) 285 S.W. 1112, it is held that contributory negligence is not established by evidence which is equally consistent with the exercise of the care by plaintiff, or where the inference of due care is just as reasonable as is the inference of the absence thereof.

The witness Ford, living just across the street west of the Jordan home, testified that on the night of the accident he saw a flash on the back end of the Jordan lot on a wire and went out on his porch; that he saw a wire down in his (the witness') front yard, fire playing around it; that he saw a man in the alley and asked him if there was a wire down and the man replied in the affirmative, stating that they would soon have it cleared up, and to be quiet so they would not attract any attention; that possibly a minute after he saw this man he saw some one coming around the front of the Jordan house, but did not know which one of the boys it was; that he called to him that there was a wire down and to be careful; that witness then went back in his house. The

next thing that attracted his attention was some one screaming on the outside; that he did not see any sparks on the wire going up to the Jordan house, which was the wire that deceased came in contact with, and which caused his death.

Mrs. Myrtle Jordan testified that at the time she came out of her kitchen door, just after deceased had come in contact with the wire in the back yard, that she did not see any electric sparks anywhere in the back yard or garden, but did see electric sparks across the street in Mr. Ford's yard.

The witness Keen, one of the city's linemen, testified that when he got there after the deceased had come in contact with the wire, there were no great big flashes of electricity about the place. The witness testified that after receiving the call about some lights being out, they drove west on Main street to Avenue U and turned south; that when they turned off Main into Avenue U they saw nothing that attracted their attention; that when they got to the alley sparks were coming from the wires, one of them being in Mr. Ford's front yard right on the alley, and the other across the street in the Jordan garden, but they did not see those sparks until they got right at the alley.

Coker testified that as soon as he was left at the alley on Avenue U the deceased crossed the street from the west side, going east, and that he, witness, had no idea about the little wire running up the side of the Jordan yard, but that he thought the deceased was in the clear because he had the ends of the wire located, and that the deceased went to step over this wire and fell backward, and that he was going east at the time; that prior to the time he saw Jordan, witness had talked to a fellow below there, whose name he did not know, and who witness told just to stay in the house and they would clear it up immediately; that he said nothing to the man he saw going into the line, and that deceased was going to the house instead of coming from it; that witness had not seen him prior to that time.

█ It is a well-established rule that before an injured person can be charged with contributory negligence he must have had knowledge of the danger and appreciated the liability of injury incident to his conduct, or that by the exercise of ordinary care he should have known and appreciated the danger of the act. Nat Jordan was on

his own premises. when killed, and under such circumstances less care in protecting himself from injury is required of the injured party. Gulf, C. & S. F. Ry. Co. v. Johnson (Tex.Civ.App.) 51 S.W. 531; Waters-Pierce Oil Co. v. King, 6 Tex.Civ.App. 93, 24 S.W. 700; Coulsen v. Aberdeen-Springfield Canal Co., 47 Idaho, 619, 277 P. 542.

In Engel v. Smith, 82 Mich. 1, 46 N.W. 21, 21 Am.St.Rep. 549, the doctrine is announced that it is not contributory negligence not to look out for danger where there is no reason to apprehend any.

It is uncertain from the record whether the party to whom Ford spoke was the deceased, since Ford said the party was coming around the corner of the Jordan home, which was northwest and across the street from Ford's home. Ford stated positively he did not know who it was. It seems certain, however, that the man described by Ford as having crossed the street from the west side, going east, was the deceased, because Coker testified that he was the man who came in contact with the wire and was killed.

The record is barren of any testimony to the effect that any sparks were seen anywhere near the point where the deceased came in contact with the garden wire. Deceased never came in contact with the broken wire, which fell across the garden fence. The two linemen sent there by the city saw no sparks until they reached the alley, some 50 or 60 feet to the south of the point where he was killed. If it be conceded that he knew the wires were down in the alley or in the rear portion of his father's premises, there is no evidence whatever to show that he had any reason to apprehend that entering upon his own premises at the point where he did would be dangerous. Coker, the city's employee, knew the wire was down and that it was charged with electricity, but he did not anticipate any danger to Jordan from the latter's attempt to enter his own premises at a point so far from the place where the electric wire was down.

In view of another trial, we will not express an opinion as to the weight of the testimony further than to say that the verdict of the jury in finding that Nat Jordan was guilty of contributory negligence is not supported by the evidence.

Because discovered peril is an exception to the doctrine of contributory negligence, it is unnecessary for us to discuss that point.

For the reasons stated, the judgment is reversed and the cause is remanded.