SOUTHERN S. S. CO. v. MEYNERS et al.
No. 9331.

Circuit Court of Appeals, Fifth Circuit.
March 20, 1940.

Rehearing Denied May 22, 1940.

J. Newton Rayzor and John R. Brown, both of Houston, Tex., for appellant.

Sam Holliday, Lewis Fisher, and D. A. Simmons, all of Houston, Tex., for appellees.

Before FOSTER, HOLMES, and McCORD, Circuit Judges.

## McCORD, Circuit Judge.

Harris County-Houston Ship Channel Navigation District was the operator of a certain dock and mechanical loading facilities at the port of Houston, Texas. Under a tariff arrangement the Southern Steamship Company used the dock and its facilities in and about the loading and unloading of its ships. At the dock the Navigation District maintained a crane shed equipped with an aerial overhead traveling type crane. The shed had a concrete apron and warehouse space to accommodate freight as it was unloaded from vessels from time to time. The overhead crane was used to move heavy freight about the warehouse or crane shed and to load and unload railway freight cars. The crane traveled on an overhead track and the operator sat below the crane in an open box where he had an unobstructed view and where he moved the crane with its heavy loads on signals from the men on the floor below.

Prior to April 27, 1936, C. M. Meyners, a foreman in the employ of the Navigation District, and a crew of men had set up scaffolds near the roof of the crane shed and were engaged in painting the roof and superstructure of the building. The scaffolds were erected above the beams supporting the rails on which the crane traveled. Painters reached the scaffolds by climbing a ladder attached to one of the steel supporting columns and then passing across the rail beam up into the superstructure. The painters were in a dangerous position when the crane was in operation and extreme care was necessary to prevent accidents and injuries.

On April 27, 1936, the Southern Steamship Company, under its tariff arrangement with the Navigation District, took over the dock, the crane shed, the mechanical equipment, and the overhead crane and its operator. The crane operator while working for Southern Steamship Company was under its direct supervision and control. He was directed by agents and servants of the Steamship Company when to commence work, when to work overtime, and when to quit work. Furthermore, he was paid for his services by the Steamship Company through the Navigation District.

On April 27th while Meyners was engaged in directing his painting crew, it became necessary for him to climb the ladder column to deliver a bucket of paint to one of his men. He climbed the ladder, then walked along the beam supporting the crane track, and passed the bucket of paint up to a painter on a scaffold above the beam. When Meyners walked out on the beam the crane had come to rest at the end of the rails and a load of steel pipe was being lowered to the floor. It was impossible to hear above the constant din of noise in the shed. Meyners kept a lookout for the crane as he moved along the beam and until he had safely delivered the bucket of paint. He looked and saw that the crane was still at rest and then turned and attempted to pass back along the beam to the ladder column a short distance away. As he walked toward the ladder column he was overtaken by the crane, was thrown under its wheels, his left foot was cut off and his right leg was badly broken and mangled. Pinned beneath the wheels he hung by his mangled legs head downward for over an hour after the accident.

Meyners brought suit against the Southern Steamship Company and the Navigation

378

District alleging that he had received his injuries as a result of the negligence of one or both of these defendants. The Steamship Company by cross action sought indemnity over against the Navigation District, and the Navigation District sought indemnity over against the Steamship Company. The court directed a verdict for the Navigation District as against Southern Steamship Company and Meyners, and also directed a verdict for Southern Steamship Company as against the Navigation District. The case as finally submitted to the jury was C. M. Meyners against Southern Steamship Company. The jury returned its verdict in the form of answers to written interrogatories submitted by the court. The court entered judgment on the verdict in favor of the plaintiff and Southern Steamship Company appealed. The Steamship Company has abandoned the appeal as to the Navigation District.

The appellant Steamship Company contends that it was not liable for the injury since the crane was being operated by Billy Leonard, an employee of the Navigation District. Touching this contention the plaintiff introduced, over objection of defendant, certain parts of the tariff agreement between the Navigation District and the Steamship Company. Item 810 of the tariff agreement in effect on the day of the accident is as follows: "Responsibility for Damage. Charge for operators of freight handling machinery will be made by the Port Commission, but it is expressly understood that the Port Commission acts solely as the agent of the User in engaging operators and paying them for their services. The operator, as well as the freight handling machinery is turned over to User and is under User's supervision and control; and User accepts sole responsibility and liability for any damage or injury to persons or property occasioned by the use and operation of such machinery, including damage to the property of the Port Commission and/or injury to its employees."

■ This tariff agreement is relevant and, when considered and weighed with all the evidence in the record, shows without dispute that the operator of the crane was working for the Southern Steamship Company at the time of the accident. The ruling of the court in this regard was free from error. Cf. Liberty Mut. Ins. Co. v. Boggs, Tex.Civ.App., 66 S.W.2d 787; Ochoa v. Winerich Motor Sales Co., 127 Tex. 542, 94 S.W.2d 416.

■ In the operation of the crane the law imposed upon the defendant the duty to use reasonable care not to injure the men engaged in painting the building and who were using the rail beams. Moreover, the plaintiff had informed the maintenance superintendent of the danger to the painters incident to the operation of the crane. The superintendent directed him to speak to the crane operator and inform him of the danger occasioned by the operation of the crane. Meyners spoke to the crane operator, Billy Leonard, and he promised to keep a lookout for the plaintiff and his crew. The law placed upon the defendant the duty to use reasonable care not to injure these workmen, and the promise of its crane operator to keep a lookout at least added emphasis to the legal duty exacted and placed upon the defendant by law. St. Louis Expanded Metal Fire Proofing Co. v. Dawson, 30 Tex.Civ.App. 261, 70 S.W. 450; Texas & P. Ry. Co. v. Watkins, 88 Tex. 20, 29 S. W. 232; Fort Worth & D. C. Ry. Co. v. Longino, 54 Tex.Civ.App. 87, 118 S.W. 198; Id., 103 Tex. 250, 126 S.W. 8.

■ There is no merit in the contention that the appellant was entitled to a directed verdict for the reason that plaintiff was guilty of contributory negligence. One is guilty of contributory negligence who fails to exercise that degree of care, precaution, and vigilance which an ordinarily prudent person would exercise, whereby and as a consequence whereof he contributes to his own injury. Weighing the evidence in the light most favorable to the appellant, contributory negligence was an issue for the jury.

The issues were fully and fairly submitted and the evidence supports the verdict. We find no reversible error in the record.

The judgment is affirmed.