**TEXAS STEEL CO. v. ROCKHOLT.**
No. 5541.

Court of Civil Appeals of Texas. Texarkana.
June 19, 1940.

Rehearing Denied July 11, 1940.

Lightfoot, Robertson, Gano & Johnston, of Fort Worth, and Stinchcomb, Kenley & Sharp, of Longview, for plaintiff in error.

Jones & Jones and C. A. Brian, all of Marshall, for defendant in error.

HALL, Justice.

This is a suit for damages instituted by W. F. Rockholt, defendant in error, against Texas Steel Company, plaintiff in error, for personal injuries to Mrs. Rockholt alleged to have been caused by the negligent acts of plaintiff in error's agent in the operation of one of its cars. The parties hereto will be referred to hereafter as in the lower court, Texas Steel Company as defendant and Rockholt as plaintiff.

It was alleged by plaintiff that on November 23, 1936, on the highway between Gladewater and Gilmer at a point about seven miles north of Gladewater, plaintiff and certain other persons were traveling in their cars in a northerly direction on the right or east side of said highway; that defendant's agent operat-:

ing one of its automobiles passed plaintiff's car in which he, his wife, and other persons were riding, and in the act of passing "pulled his car directly in front of the one driven by plaintiff, and brought it to a sudden stop, or suddenly or materially reduced the speed of said vehicle, directly obstructing the highway in front of plaintiff and those riding in the car with him. That plaintiff immediately applied the brakes on the car which he was driving in an attempt to keep from striking the car which had been negligently and carelessly driven in front of him by the defendant, acting by and through its agents, servants, and employees, and that due to the sudden obstruction of the highway in front of plaintiff by defendant's automobile, plaintiff's car became uncontrollable and turned over and into the ditch on the left side of the highway in the direction in which plaintiff was going, and that in doing so Mrs. Bertha Rockholt, being a young woman of about twenty-five years, wife of the plaintiff herein, was severely and permanently injured." Plaintiff alleged further that defendant was guilty of negligence in the following particulars: (1) In attempting to pass a string of cars while approaching a hill, without sufficient space or clearance, when proceeding at a reasonable rate of speed, to pass said cars in safety, in violation of the penal laws of this state; (2) in traveling at a greater rate of speed than forty-five miles per hour in violation of the penal laws of this state; (3) in operating said car so as to obstruct the highway in front of plaintiff, thereby causing plaintiff to drive his car "in such manner as to keep from striking the car of defendant, and forcing plaintiff to apply his brakes, the roads being then and there wet and slick, causing the injuries hereafter complained of"; (4) in operating its automobile so "as to force or crowd automobiles situated as was plaintiff's off the highway" with knowledge of the condition of the highway at the time and that said act would cause serious bodily injury or death; (5) in operating "said car in a careless and negligent manner considering the condition of the highway * * *"; (6) in negligently and carelessly passing and attempting to pass plaintiff's car on a hill in violation of the penal laws of this state. In the alternative, plaintiff alleged that if such acts or omissions set out above be not penal in their nature, then they each constituted negli-

gence on the part of defendant which was a proximate cause of the injuries complained of. In addition to the claim for damages for the alleged injuries to Mrs. Rockholt, plaintiff sought damages for the wrecking of his car in the net sum of $90, and for medical bills incurred by Mrs. Rockholt.

Defendant in its answer, in addition to general and special exceptions and general denial, alleged that plaintiff was guilty of contributory negligence: (1) In speeding up his car after being passed by defendant's agent, and "attempting to drive as close to the car of defendant as possible," with knowledge of the slick and wet condition of the road; (2) in jamming on his brakes "thereby forcing his car to skid on the wet, slick road and which resulted in plaintiff's car turning over;" (3) in failing to use proper care in handling his car to avoid turning it over, "after observing the conditions surrounding the turning over of defendant's automobile;" (4) in failing to keep a proper lookout, and to keep his car under control considering the wet and slick condition of the highway. Defendant also alleged that the accident to plaintiff was unavoidable and not the result of defendant's negligence. By supplemental petition plaintiff denied generally and specifically the allegations in defendant's answer, and says if he be mistaken in the distance between plaintiff's and defendant's cars immediately before the wreck, "nevertheless his (plaintiff's) action in applying his brakes was one in emergency brought on under the existing circumstances" and that he exercised ordinary care in acting under said emergency.

Trial was to a jury on special issues, and in answer thereto the jury found: (1) That the operator of defendant's automobile after passing plaintiff's car drove to the right at a time when the highway was not reasonably clear of plaintiff's car; (2) that the driver of defendant's automobile suddenly reduced its speed after passing plaintiff's car in such manner as to obstruct the highway in front of plaintiff; (3) that the driver of defendant's automobile attempted to pass cars which were approaching a hill when he did not have sufficient space in which to pass said cars in safety. The jury also found that these acts of the agent of defendant were each negligent and each constituted a proximate cause of Mrs. Rockholt's injury. The jury absolved plaintiff of all acts of contributory negligence charged against him.

The jury also answered that the accident was not an unavoidable one; and, lastly, that the plaintiff acted in an emergency in applying his brakes immediately before the accident. Upon these findings judgment was entered for plaintiff.

Propositions 1 and 2 relate to the action of the lower court in refusing to instruct the jury to return a verdict for defendant, the contention being that the evidence wholly failed to establish any negligent act, either of omission or commission, charged against defendant in plaintiff's petition, and that "the uncontradicted evidence shows, as a matter of law, that the damages sued for by plaintiff was caused by and resulted from an unavoidable accident or caused by and resulted from the negligent act of the plaintiff himself."

The evidence on behalf of the plaintiff was to the effect that his car and three other cars, including defendant's, were traveling along the highway between Gladewater and Gilmer in a northerly direction on the east or right-hand side of the highway, at the time plaintiff's car was wrecked and Mrs. Rockholt received her injury, in the following order: The front car (the one farthest north) was a Model T Ford, and some four or five car lengths behind it was plaintiff's car. About the same distance behind plaintiff's car was the witness Lively's car, and the fourth or last car in line was defendant's; that the road at the place of the wreck is practically straight, with a slight curve ahead at top of the rise to the north. Plaintiff's evidence also shows that defendant's car passed Lively's and plaintiff's cars immediately before the wreck and at a point at or near the beginning of an incline; that after defendant's car had passed plaintiff's, both cars (plaintiff's and defendant's) began skidding and slipping, each turning over and coming to rest on the left-hand side of the highway dump; that the defendant's car was resting about 120 feet north of plaintiff's car. Plaintiff's evidence also showed that defendant's car when it passed plaintiff's was traveling at a speed of 35 or 40 miles an hour. The witness Lively who was traveling two or three car lengths behind plaintiff's car, testified that defendant's car went around plaintiff's car "and just did do so. I mean he just barely passed the Rockholt's (plaintiff's) car." This witness testified further that defendant's car "directly" after passing plaintiff's car began skidding from right to left and immediately plaintiff's car began skidding. Plaintiff himself testified:

"Q. All right, after this car (defendant's) got abreast of you, did he go on pass? A. Yes, sir, he went on pass me just out—ahead of me.

"Q. And then what did you do? A. Well, he turned in, come in toward the right-hand side of the road.

"Q. About how far ahead of your car would you say he was when he turned in back to the right-hand side of the road, or cut in, as I used the expression? A. Somehow I couldn't judge distances just exactly in feet, but he was awful close—

"Q. Did he get clear back to the right-hand lane? A. Approximately in the right-hand lane.

"Q. Approximately, you mean his car was closer to the center of the road than you were? A. Yes, sir, closer to the center of the road than I was—

"Q. Now as Mr. Clampitt (driver of defendant's car) cut in, did you notice any unusual motion of his car or anything unusual about the back end of it? A. Well, the thing I noticed unusual was the tail light flashing."

Plaintiff testified further that defendant's car began to skid when the tail light flashed, the rear end skidding to the left and the front end to the right; that at this time he (plaintiff) put his brakes on hard without thinking of the slick road. After the tail light flashed plaintiff testified he put his brakes on "awfully instant;" that he did nothing else after defendant's car began to skid but put on his brakes, that was all he could do; that he, plaintiff, lost control of his car and continued skidding until he went into the ditch. On cross-examination plaintiff testified further:

"Q. And no part of his (defendant's) car was making any sort of barrier to keep you from going straight on if you hadn't put your foot on the brake? A. There wasn't anything there to cause it after he turned over.

"Q. After you saw his car first start to skid and seeing the back end swerve, you could see the side of the road was clearing out for you? A. No, sir; if I had waited there long enough I guess he would have gotten out of the way."

Mrs. Rockholt's testimony as to what happened immediately before and at the time of the wreck, reduced to narrative in

defendant's brief, in substance is: "We were on our right-hand side of the road. That other (defendant's) car came around us and came just right up close to us as it came around and it never got directly on the right side of the road. The right fender was about even with our left fender, was as near as it got in front of us. It did not get in front of us at that time. After the car passed us it was pretty close to us. The car that passed us never did check speed. Came in there almost in front of us and pulled up even with our car and the brake lights flashed and it began skidding. I don't know as I can exactly remember how it skidded because it excited me just a little as it came around us and driving at the speed and the action of the car and all, but I know it skidded, and it attracted my attention because of those things. I don't remember just exactly how it started skidding but I know the first thing I noticed it was cross-ways of the road. If we had proceeded right on as we were going, we would have either hit the car that was cross-ways or the car that had been in ahead of us on the right. The best I remember the car that had been in front of us all the time was just maybe barely ahead of the car that was skidding. It was red clay on the road outside of the pavement off the road. It was rainy, cold, damp weather." There is no contention that the wreck was caused by defendant's car striking any part of plaintiff's car. It is undisputed that at the time of the wreck it was misting rain and the pavement was wet and slick.

It is a well-settled rule in this state that a verdict should not be directed for defendant, "if, discarding all adverse evidence, and giving credit to all evidence favorable to plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff." Wininger v. Ft. Worth & D. C. Ry. Co., 105 Tex. 56, 143 S.W. 1150; Jackson v. Langford, Tex. Civ.App., 60 S.W.2d 265; McLaughlin v. Horn-Allen Co., Tex.Civ.App., 76 S.W.2d 226; Central Motor Co. v. Roberson, Tex. Civ.App., 139 S.W.2d 287; T.J.Vol. 41, p. 949, Sec. 177. Furthermore, negligence, "whether of the plaintiff or defendant, is generally a question of fact." Lee v. International, etc., Ry. Co., 89 Tex. 583, 36 S.W. 63, 65; Wininger v. Ft. Worth & D.

C. Ry. Co., supra. While it is true that the evidence with respect to negligence of both plaintiff and defendant is sharply conflicting, still it is "the province of the jury to reconcile [these conflicts], if possible; and if this can not be done, then it was their duty to give credit to such of the witnesses as seemed best entitled to it." Marine Fire Ins. Co. v. Burnett, 29 Tex. 433; Austin Fire Ins. Co. v. Adams-Childers Co., Tex.Com.App., 246 S.W. 365; Greenway v. Great A. & P. Tea Co., Tex. Civ.App., 114 S.W.2d 435, and authorities there cited. So, guided by above authorities, we must conclude that the driver of defendant's car drove it over a wet and slick pavement, speedily, in front of plaintiff's car; that he immediately applied his brakes, causing the car to skid in such way as to obstruct the highway directly in front of plaintiff's car, thereby forcing plaintiff to apply the brakes to his car to avoid striking defendant's car; that these acts of defendant's agent detailed above and others in the record of the same import are sufficient to sustain the jury's finding of negligence and that each of such acts of negligence constituted a proximate cause of the injury to Mrs. Rockholt and the damages attributable thereto. And this is true regardless of whether defendant's car actually struck plaintiff's car. Yturria v. Everton, Tex.Civ.App., 4 S.W.2d 211; 5 T.J. 723 Sec. 120. Under the attending circumstances of this record the jury was warranted in finding that the injury to Mrs. Rockholt or some other person similarly situated should have been reasonably anticipated by the defendant's agent as the direct result of his act in attempting to pass plaintiff's car at the time and place he did, and under the conditions and circumstances existing at the time. "It is not required that the particular accident complained of should have been foreseen. All that is required is 'that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen.'" Continuing, Judge Critz states: "In order to constitute the owner and the driver of this truck liable for the injuries sustained by Walter Carey, they did not have to foresee that his injuries would occur in the exact way in which they did occur." Carey v. Pure Distributing Corp., 133 Tex. 31, 124 S.W.2d 847, 849,

850; San Antonio & A. P. Ry. v. Behne, Tex.Com.App., 231 S.W. 354. In Missouri-Kansas-Texas R. Co. of Texas v. McLain, 133 Tex. 484, 126 S.W.2d 474, 475, Judge Critz discussing a fact situation similar to the one here, except that the negligent offender in that case is one step further removed in the sequence of events, says:

"On the early morning of January 11, 1931, McLain was returning to his home from his place of employment. In so returning he was walking on the street in question here. When he reached the point where the Railroad's train was blocking the street on which he was traveling, he was compelled to await the removal of the train from the crossing. While McLain was waiting at the crossing in question an automobile approached such crossing, traveling · in the same direction McLain had been traveling. The party driving the automobile, due to the existing darkness and the bad visibility produced by the fact that the weather was cloudy and misty, did not see the train blocking the crossing until he was within such close proximity thereto as to make it necessary for him to undertake to make a quick and sudden stop on what was then a wet and slippery highway. The driver of such automobile did undertake to make such stop under the conditions named. In undertaking to make such stop the driver of the automobile lost control thereof, so that same skidded and slid, striking McLain and thereby so injuring him that his death resulted therefrom. The driver of the automobile did not lose control of the automobile through any defect in the vehicle itself, but simply because he was compelled to attempt to stop it to avoid hitting the train. The driver of the automobile did not see McLain. At the time McLain was struck he was standing on the street, either on the paved or the unpaved part thereof. * * *

"Under the facts of this record, the jury was justified in concluding that the Railroad was negligent, and that it ought to have foreseen the circumstances attendant upon the approach of this automobile to this blocked crossing. The jury was also justified in concluding that the train crew knew that pedestrians using this street would have to wait at this blocked crossing until this train was removed. From all this, it cannot be said that the jury was not justified in concluding that the train crew ought to have anticipated that a pedestrian might be injured in the way McLain was injured, or in some similar way."

These propositions are overruled.

By defendant's third proposition it is asserted that there is no evidence in this record to warrant the jury's finding that the injuries suffered by Mrs. Rockholt was not the result of an unavoidable accident; that "all the physical facts and undisputed testimony shows conclusively that it was an unavoidable accident." What we have said in respect to the sufficiency of the evidence to support the findings of the jury relating to the negligence charged against defendant in discussing propositions 1 and 2 and the authorities there cited are applicable here. This proposition is overruled.

Defendant's 4th, 5th, and 6th propositions assert that the jury's answers to special issues 1 to 9, inclusive, are "wholly without any pleadings or evidence to support them and said findings are so contrary to the physical facts, the uncontradicted evidence and to the great weight and preponderance of the evidence that they should not be permitted to stand as any support or basis for the judgment entered herein. * * *" These issues relate to alleged negligent acts of defendant at the time and place of the wreck and were all answered favorably to plaintiff. The issues, it is true, are not in the exact words of the pleadings, but this is not absolutely necessary. As said by Judge Speer in his work on Special Issues: "It is of course not required that there be literal exactness, but there must at least be substantial identity of agreement. * * * The test is: Does the interrogatory submit the issue pleaded?" Speer's Law of Special Issues, Sections 179, 180. An examination of the issues in connection with the pleading upon which they are based reveals a substantial compliance with said pleading. The principal difference between the two being that the issues are so framed as better to set forth the ultimate facts sought to be established. Jones v. McIlveene, Tex.Civ.App., 105 S.W.2d 503, writ dismissed; Southern Underwriters v. Kelly, Tex.Civ.App., 110 S.W.2d 153. And the answers to said special issues are amply supported by the testimony with the possible exception of special issue No. 7 and its related issues No. 8 and No. 9. We have our doubts of the sufficiency of the evidence to support the answers to these issues. However, the lower court could, and no doubt did, disregard these answers

848

as being immaterial under the authority of Brokaw v. Collett, Tex.Com.App., 1 S.W.2d 1090; Schneider v. Delavan, Tex.Civ.App., 118 S.W.2d 823 (on motion for rehearing, 118 S.W.2d at page 825), and based the judgment on the jury's other findings of negligence. These propositions are overruled.

■ Propositions 7 and 8 assert that the answers to special issues 10 to 15, both inclusive, are wholly without support in the evidence. These issues relate to the defense of contributory negligence as applied to the acts and conduct of plaintiff at the time and place of the wreck and were all answered favorably to plaintiff. We have carefully examined the evidence and conclude it amply supports the answers of the jury to said issues. These propositions are overruled.

■ By propositions 9, 10, 11 and 12, the contention is again made that there were no pleadings or evidence to authorize the submission of special issues 1 to 9, both inclusive, relating to the alleged acts of negligence of defendant and special issue No. 19 relating to unavoidable accident. This contention has already been disposed of adversely to defendant and will not be noticed further. By these same propositions another contention is advanced, namely, "that when taken in connection with the definition in the charge of 'preponderance of the evidence' and as meaning 'the greater weight and degree of credible testimony' the issues as thus framed and constructed were not only on the weight of evidence but were misleading to the jury and clearly and distinctly placed the burden of proof upon defendant to establish its contentions with reference thereto by a preponderance of the evidence, which was a greater burden than that imposed upon it by law." The 5th paragraph of the court's charge to the jury is: "By the term 'preponderance of the evidence' as used herein, is meant the greater weight and degree of credible testimony." Special issue No. 1, which is typical as to form of the others complained of, except No. 19, is: "Do you find from a preponderance of the evidence that the operator of the defendant's automobile after passing the plaintiff's car, drove to the right at a time when the highway was not reasonably clear of plaintiff's car? Answer 'Yes' or 'No'." Simply stated, the defendant contends that these issues placed the burden on it to establish the negative of said issues by a preponderance of the evidence, which, if true, would certainly present error. However, we do not consider such to be the effect of these issues. In Casualty Reciprocal Exchange v. Berry, 90 S.W.2d 595, 598, writ refused, discussing a special issue identical in form with that set out above, and preceded there, as here, with the definition of "preponderance of the evidence," we said: "A careful examination of the issues submitted by the court in his charge shows that he placed the burden of proof in each issue on the appellee." In Traders & General Ins. Co. v. Harper, Tex.Civ.App., 140 S.W.2d 593, 596, Chief Justice Johnson of this court, discussing a special issue in form identical with the one above said: "It will here be noted that the trial court's instructions, directing the jury to answer 'Yes' or 'No,' to a question naturally required to be so answered, such as above question No. 6, is held not reversible error. Stevenson v. Wilson, Tex.Civ.App., 130 S.W.2d 317 [writ refused]; Federal Underwriters Exchange v. Bullard, Tex.Civ.App., 128 S.W. 2d 126; Willis v. Smith, Tex.Civ.App., 120 S.W.2d 899 [writ dismissed]." Strongly supporting the above holding is Texas Employers Ins. Ass'n v. Lemons, 125 Tex. 373, 83 S.W.2d 658, and authorities there cited. We can conceive of no clearer method of submitting a special issue requiring a "Yes" or "No" answer than that expressed in the issue copied above. Special issue No. 19, the one relating to unavoidable accident, was in the form approved by the Commission of Appeals in Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956, and was submitted at a time when that opinion was in full force. This action of the trial court does not present error. We call attention, however, to the modification of the Richardson case, supra, in Gulf, C. & S. F. R. Co. v. Giun, 131 Tex. 548, 116 S.W.2d 693, 116 A.L.R. 795. These propositions are overruled.

Finding no error in this record, the judgment in the court below is in all things affirmed.