## FARRIS et al. v. INTERSTATE CIRCUIT, Inc.

### No. 9654.

Circuit Court of Appeals, Fifth Circuit.

Jan. 3, 1941.

Rehearing Denied Feb. 11, 1941.

Robert Harrison, of Fort Worth, Tex., for appellants.

Chester B. Collins, of Fort Worth, Tex., for appellee.

. Before SIBLEY and HOLMES, Circuit Judges, and DAWKINS, District Judge.

HOLMES, Circuit Judge.

Mr. and Mrs. L. L. Farris, appellants, purchased admission tickets to, and attended, the Hollywood Theatre in Fort Worth, Texas. As they were leaving their seats in the theatre after seeing the program, Mrs. Farris fell and sustained serious and painful injuries. She filed a suit for damages against Interstate Circuit, Inc., the lessor and operator of the theatre, charging that the negligent and improper construction and lighting of the building created a dangerous condition which directly and proximately caused her injuries.

At the conclusion of the evidence, the trial court reserved decision upon the defendant's motion for a directed verdict, and submitted the case to the jury, which found for the plaintiffs. Thereupon, plaintiffs moved for a new trial on the grounds that the verdict was grossly inadequate and that certain testimony was improperly admitted over their objection. The court overruled the motion for a new trial, and entered judgment for the defendant in accordance with its motion; this appeal is brought therefrom.

These facts were shown: The floor of the theatre sloped downward, and the rows of chairs were arranged on tiers. Those occupied by appellants were four to six inches higher than those immediately in front of them. The rows were just far enough apart for a man of ordinary size to sit comfortably in a straight position; in a slumped position, his knees would nearly touch the back of the seat in front of him. The platform between the rows was approximately a foot wide when the seats of the chairs were down. The backs of the chairs were sloped slightly backward in the usual manner, and the platform between the rows extended approximately six inches beyond the point perpendicular to the rearmost part of the top backs of the chairs. The platform did not extend entirely to the seats on the tier in front, leaving a space two inches wide where the chair legs were located, and wider between them.

On the evening in question, appellants were seated several chairs from the aisle. Most of the intervening chairs were occupied. Leading the way out, Mrs. Farris twice said "Pardon me" to those in the chairs, and they obliged by shifting their knees to give passage room; none of them stood. Moving in the narrow space thus afforded her, Mrs. Farris testified, her heel slipped into the crevice between the platform and the leg of the front chair and caught there, throwing her down across the aisle and causing her injuries. She could not see these openings in the darkened theatre, and did not know they were there. Mr. Farris described the circumstances of the accident in substantially the same way. Photographs were introduced which clearly showed the physical

structure of the building at the place where the accident occurred. Mrs. Cockrell, a witness for the plaintiffs, testified that she had hung her shoe in a similar aperture in the Hollywood Theatre in 1938 under circumstances quite similar to those in the present case. She, too, was thrown, but suffered no injury and made no complaint.

Appellee introduced witnesses, purporting to be experts, who testified that the seating arrangements of the theatre were standard, both in architectural design and construction, although only the oldest theatre in Fort Worth and none in Dallas followed similar designs. One of these witnesses testified that the aperture into which Mrs. Farris claimed to have stepped could have been filled in or bridged; that patrons entering and leaving the seats might step in it and hang their heels. Several of appellee's witnesses were working in the theatre when the accident occurred. None had known of any occasion when anyone's foot or shoe had descended into the hole, but each admitted that it could have happened without his knowledge.

■ As the operator of a public theatre, the appellee was under a duty to exercise the care of an ordinarily prudent person to make the premises reasonably safe for its patrons.[1] The structural condition complained of as dangerous had been in continual existence from the date the theatre was leased by appellee many years before. The testimony concerning the visibility in the theatre shows that there was the usual and customary degree of darkness ordinarily maintained in motion picture theatres and necessary to make properly visible the pictures projected upon the screen. Therefore, the question upon which liability must turn is whether or not, in the exercise of ordinary prudence, a reasonable man would, under the circumstances, have permitted the condition to continue in existence unchanged.

■ This court agrees that the evidence made out a case for jury determination. It is the established rule in Texas that if, when all the plaintiff's evidence is fairly considered in the light most favorable to him, and every reasonable inference fairly to be drawn therefrom is given full effect, a jury might have found in his favor, it is improper to direct a verdict for the defendant.[2] If it be conceded that the theatre was constructed after a universal custom and long-followed design, it does not necessarily follow that such care was taken as reasonable prudence would require.[3] This lady, in attempting to follow an ordinary, usual, and natural course, wedged the heel of her shoe in the aperture; another lady had suffered the same experience in the preceding year. Appellee's witnesses testified that this might be done, and that the opening could be bridged and walked over safely.

■ Under the evidence adduced by the plaintiffs, no contributory negligence could be attributed to Mrs. Farris.[4] Under the law of Texas, we think the jury might reasonably have found in favor of the plaintiff (as it did), and that the motion for a directed verdict should have been overruled.[5]

■ The motion for a new trial was urged on two grounds: that the verdict was grossly inadequate, and that certain testimony was improperly admitted. We express no opinion on the first ground, our decision, on the second making it unnecessary. The admission of the testimony complained of was clearly prejudicial error. Clyde Allen, who had been working in the Hollywood Theatre all of his mature life, was permitted to give

[1] Texas Consolidated Theatres, Inc., v. Pittman, 5 Cir., 93 F.2d 21; Burke v. State Fair of Texas, Tex.Civ.App., 93 S.W.2d 765.

[2] Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Southern Steamship Co. v. Meyners, 5 Cir., 110 F.2d 376; Commercial Casualty Co. v. Stinson, 6 Cir., 111 F.2d 63, 64; Texas Steel Co. v. Rockholt, Tex.Civ.App., 142 S.W.2d 842.

[3] Wabash Ry. Co. v. McDaniels, 107 U.S. 454, 2 S.Ct. 932, 27 L.Ed. 605; Hellweg v. Telephone Co., 71 App.D.C. 346, 110 F.2d 546; Morgan & Bros. v. Ry. Co., 50 Tex.Civ.App. 420, 110 S.W. 978; Lyon v. Bedgood, 54 Tex.Civ.App. 19, 117 S.W. 897.

[4] United Production Co. v. Chesser, 5 Cir., 107 F.2d 850; Missouri, K. & T. R. Co. v. Luten, Tex.Com.App., 228 S.W. 159; Jordan v. City of Lubbock, Tex. Civ.App., 88 S.W.2d 560.

[5] Cf. Texas Consolidated Theatres, Inc., v. Pittman, 5 Cir., 93 F.2d 21; Henry v. Publix Theatres Corp., Tex.Civ.App., 25 S.W.2d 695; Walgreen Texas Co. v. Shivers, Tex.Civ.App., 131 S.W.2d 650.

his opinion that the lighting in the theatre was the standard lighting customarily used in the best theatres. He was not qualified as an expert, and his testimony indicated strongly that he was not an expert on the subject of inquiry.

Clay Berry, a building manager wholly lacking in any technical skill, was permitted to testify that, at the time the building was leased to the appellee, he considered it to be reasonably safe for use as a theatre. E. E. Fairweather, an architect or draftsman who, so far as the record shows, had had no experience with plans or specifications for any theatre building, was permitted to testify that, in his opinion, the floor plans of the Hollywood Theatre were of standard design and construction, and that it was a safe place.

Great weight was accorded this expert testimony by the District Judge in directing the verdict for the defendant.

█ The theory upon which expert testimony is excepted from the opinion evidence rule is that such testimony serves to inform the court about affairs not within the full understanding of the average man.[6] Experts are entitled only to give in evidence their opinion as to conclusions from facts within the range of their specialties.[7] Excepting the testimony of experts, the law requires actual knowledge in a witness of the fact to which he testifies.[8] An expert is not permitted to state his opinion on a matter of common knowledge;[9] nor can he give his opinion as to conclusions from facts within his special skill or knowledge when that opinion answers the precise question for determination by the jury.[10] An expert is one who, by study or practical experience, has acquired a knowledge or skill or understanding of certain facts beyond that of the average man.

█ These witnesses were not qualified as experts. The opinion they offered concerning the safety of the construction invaded the province of the jury; and, as the unconflicting testimony and photographs clearly portrayed the conditions existing at the scene of the accident, the jury was as fully competent to determine the question before it as any architectural or other expert. The consideration given by the jury to the testimony thus improperly admitted may or may not have affected its verdict. Since this court cannot be certain that it did not, it must be presumed that reversible error was committed.[11] The new trial should have been granted.

The judgment of the District Court is reversed, and the cause is remanded to the district court for further proceedings not inconsistent with this opinion.

SIBLEY, Circuit Judge (dissenting).

Under the instructions of the court the jury were first to determine whether there was negligence and liability; and if so, what the damages suffered were. The evidence objected to related only to the first issue. On that issue the plaintiff, the objector, won. The jury rejected the evidence which the judge should have rejected. If there was error on the judge's part it was clearly harmless.

The extent and permanence of the injury were hotly disputed. The damages fixed by the jury are well authorized by the evidence on that issue. I do not think cause for a new trial is shown.

[6] Beckwith v. Sydebotham, 1 Camp 116; Wigmore on Evidence, 2nd Ed., Vol. 4, pages 106, 108.

[7] Congress & E. Spring Co. v. Edgar, 99 U.S. 645, 25 L.Ed. 487; Greenleaf on Evidence, Vol. 1, Sec. 440; Wigmore on Evidence, 2nd Ed., Vol. 4, pages 118, 119.

[8] Luther v. Borden, 7 How. 1, 12 L. Ed. 581.

[9] Milwaukee & St. P. R. Co. v. Kellogg, 94 U.S. 469, 24 L.Ed. 256; Schmeider v. Barney, 113 U.S. 645, 5 S.Ct. 624, 28 L.Ed. 1130.

[10] United States v. Spaulding, 293 U.S. 498, 55 S.Ct. 273, 79 L.Ed. 617.

[11] Vicksburg & Meridian Ry. Co. v. O'Brien, 119 U.S. 99, 7 S.Ct. 172, 30 L. Ed. 299; Boston & Albany R. R. Co. v. O'Reilly, 158 U.S. 334, 15 S.Ct. 830, 39 L.Ed. 1006; Fillippon v. Albion Co., 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853; McCandless v. United States, 298 U.S. 342, 56 S.Ct. 764, 80 L.Ed. 1205; Nicola v. United States, 3 Cir., 72 F.2d 780. Cf. Watt v. Starke, 101 U.S. 247, 25 L. Ed. 826; Hume v. Bowie, 148 U.S. 245, 13 S.Ct. 582, 37 L.Ed. 438.