The CITY OF DALLAS, Appellant,

v.

Billy W. BROWN, Appellee.

No. 17740.

Court of Civil Appeals of Texas, Dallas.

Dec. 30, 1971.

Rehearing Denied Jan. 14, 1972.

Alex Bickley, City Atty., T. Alex Eastus, Asst. City Atty., Dallas, for appellant.

David M. Kendall, Jr., Robert Woodruff, Woodruff, Kendall & Smith, Dallas, for appellee.

GUITTARD, Justice.

Plaintiff Billy Brown was injured in course of his employment by defendant City of Dallas, which had no statutory workmen's compensation coverage. He sued for damages under the Texas Tort Claims Act, alleging negligence of a fellow employee. The principal question is whether a finding of contributory negligence bars his recovery. We hold that it does.

Brown was a helper on a garbage truck operated by the city sanitation department. As the truck started forward in a narrow alley it caught and crushed him between the truck body and a utility pole. The jury found that the occurrence was proximately caused by the negligence of the truck driver in starting the truck when Brown was not in a safe position and in failing to keep a proper lookout for Brown's safety. The jury also found in answer to issues 13, 14 and 15 that immediately prior to the occasion in question Brown made the oral statement "Go ahead" loud enough to be heard by the driver, that the making of such statement was negligence and was a proximate cause of the occurrence. The trial court granted plaintiff's motion for judgment notwithstanding these answers and rendered judgment in his favor for the amount of the damages found by the jury. The city appeals, contending that judgment should be rendered on the verdict. We sustain the city's points, which urge that none of the

grounds stated in plaintiff's motion are sufficient to justify the trial court in disregarding the findings of contributory negligence.

We consider first plaintiff-appellee's contention that there was no evidence to support the contributory negligence findings, and also his cross-points contending that these findings were against the great preponderance of the evidence. Testimony shows that the truck was specially equipped for collecting garbage. On each side of the body, immediately behind the cab, were openings into which garbage cans were emptied. Inside the body was a power-driven packing ram, which required action by both the driver and one of the helpers before it would operate. When one of the helpers needed to pack the garbage he would give an oral signal to the driver, who would engage the power take-off. One of the helpers would then pull a lever on the side of the body to start the ram moving backward. The ram would pack the garbage toward the rear of the truck and make room for more garbage toward the front. When the helpers were ready to move to the next location, they would call out to the driver and he would move the truck forward.

According to Brown, no particular words were used as signals to pack the garbage or to move the truck. He testified that when they wanted the garbage packed they would say "Pack it" or "Let's pack it" or "Going back," and that the signal to move the truck was "Go ahead," "Let's go ahead" or "Hit it."

On the occasion in question, Brown was working on the right side of the alley and Colum, the other helper, was working on the left. The lead man, Robbie Head, was sitting in the cab beside the driver. Plaintiff testified that he had emptied three cans and said to the driver "Let's pack it," since his side was full. The driver said "Okay". Brown testified he then stepped on a small railing on the side of the truck, intending to pull the lever to operate the ram, and said something to warn the other helper, which he believed was "Going back," and the truck then moved forward without warning and crushed him against a utility pole, which was about three feet ahead.

On cross-examination Brown admitted that he said "Go ahead," but insisted that he only meant to tell the driver to go ahead and compress the garbage.

None of the other members of the crew heard any signal to pack the garbage at this location. Head testified that he heard Brown say "Go ahead." Colum testified that he had emptied his can and was inside the truck when Brown crawled back up on the truck and called out, "Let's go." The driver testified that he started pulling off when Brown got back up on the truck and said "Go ahead." Brown knew that the pole was only a short distance ahead, and had ample reason to foresee that if he gave the driver a signal to start, the truck might move forward and injure him. By his own testimony, the words "Go ahead" were frequently used as a signal to the driver to start the truck.

We hold this evidence sufficient, both legally and factually, to support the jury's finding that Brown did say "Go ahead," and that such statement under the circumstances was negligence and a proximate cause of the occurrence. Although the driver had the duty to look in the rear view mirrors and make sure that all the helpers were in a safe position before moving the truck forward, his negligence was a concurring rather than an intervening cause, since such movement of the truck was foreseeable by Brown. Clark v. Waggoner, 452 S.W.2d 437 (Tex.Sup.1970).

Appellee also contends that the trial court's judgment was correct because issues 13, 14 and 15 were not ultimate issues of fact. He argues that the ultimate issues were whether Brown gave the signal to the driver to move the truck when he was in an unsafe position and whether he said "Go ahead" when he should have said

"Pack it." We do not agree that these were ultimate issues. The specific act charged against Brown as negligence was his utterance of the words "Go ahead." Whether he intended those words as a signal to pack the garbage was an evidentiary matter. The intent of an act is not controlling when the issue is negligence. Likewise, whether Brown was in a safe place when he spoke the words was an evidentiary circumstance bearing on the question of negligence. The ultimate issues were whether he spoke the words and whether the use of those words under the circumstances was negligence proximately causing his injury.

■ The phrase "loud enough to be heard by the driver," in issue 13 does not make the issue evidentiary. This phrase need not have been included because whether the words "Go ahead" were spoken loudly enough for the driver to hear was an evidentiary circumstance bearing on the issues of negligence and proximate cause. If they had not been spoken loudly enough to be heard, they could not have been a proximate cause of the truck moving. However, issue 13 does submit the ultimate issue of whether the words were spoken, and the jury could not have answered the issue in the affirmative without finding that the words were spoken. Any additional burden because of this unnecessary phrase fell on the city, which had the burden of proof. Appellee presents no cross-point complaining of the inclusion of the unnecessary language in issue 13. The question before us is whether the issue submitted an ultimate issue of fact, and we hold that it did, notwithstanding this unnecessary language.

■ Appellee also argues that since there was no substantial dispute as to whether Brown spoke the words "Go ahead," the only disputed matter in issue 13 was whether he spoke these words loud enough to be heard by the driver, and that was an evidentiary matter. If appellee concedes that he did say "Go ahead," then issue 13 was unnecessary and need not have been submitted, but appellee is in no position to complain. Issues 14 and 15 submitted whether his speaking such words was negligence and a proximate cause of the occurrence. We hold that these were ultimate issues, notwithstanding the inclusion of the unnecessary language in issue 13. It does not matter whether this unnecessary language was included by implication in issues 14 and 15 since, as we have already pointed out with reference to issue 13, any added burden fell on defendant rather than plaintiff.

We also overrule appellee's contention that these issues were not supported by pleadings. Among the allegations of contributory negligence in the city's answer was the following:

"In giving the vocal direction to the driver to 'go ahead' which was the established procedure for indicating to the driver to place the vehicle in motion, at such time when it was the intent of the Plaintiff to direct the driver to engage the power take off in order to pack the garbage."

■ Brown's intent in speaking the words "Go ahead," need not have been alleged, since it was only an evidentiary circumstance. As we have held above, the ultimate issues were whether he spoke them and whether he was negligent in doing so. The allegation quoted above was sufficient to give notice that the city was claiming that Brown was negligent in this respect. The trial judge is not required to follow the exact words of the pleadings. He may frame the issues so as better to set forth the ultimate facts to be established. Green v. Walgreen Drug Co., 368 S.W.2d 688 (Tex.Civ.App., Beaumont 1963, writ ref'd n. r. e.); Texas Steel Co. v. Rockholt, 142 S.W.2d 842 (Tex.Civ.App., Texarkana 1940, writ ref'd).

We come now to appellee's contention that contributory negligence is not available as a defense because the city was eligi-

ble to provide workmen's compensation coverage for its employees, but had not done so. He argues that under the Texas Tort Claims Act the city is in the same position as a private employer whose common-law defenses under such circumstances are abolished by the Workmen's Compensation Act, Tex.Rev.Civ.Stat.Ann., art. 8306, § 1 (1967). Appellee relies on § 3 of the Tort Claims Act, Tex.Rev.Civ.Stat.Ann., art. 6252–19 (1969), which provides that units of government shall be liable for damages for personal injuries proximately caused by the use of tangible property "under circumstances where such unit of government, if a private person, would be liable * * * in accordance with the law of this state." [1]

We cannot adopt this construction of the statute because to deny the city an employer's common-law defenses would, in practical effect, make workmen's compensation coverage for city employees mandatory, contrary to the statute authorizing such coverage, Tex.Rev.Civ.Stat.Ann., art. 8309e–2, § 3 (Supp.1971), which expressly provides that such coverage is permissive:

"The provisions of this Act authorizing cities, towns, and villages to provide workmen's compensation benefits or to take out workmen's compensation insurance is permissive only and the provision hereof with respect to either self-insurance or insurance under a policy of insurance is not mandatory."

This provision was authoritatively construed in Boswell v. City of Sweetwater, 341 S.W.2d 664 (Tex.Civ.App., Eastland 1960, writ ref'd), in which the Eastland Court of Civil Appeals held that it would be inconsistent with this permissive language to hold that failure of municipalities to participate in workmen's compensation insurance or in self-insurance for the benefit of their employees would destroy their common-law defenses.

Presumably, this construction has legislative approval. The statute which was construed in *Boswell* was not present article 8309e–2, but was an earlier statute, then referred to as article 8309e, which contained the identical language above quoted.[2] We must assume that the legislature knew of the *Boswell* decision when it re-enacted this provision in 1969 as a part of article 8309e–2,[3] and that it intended these same words to be construed in accordance with that decision. Marmon v. Mustang Aviation, Inc., 430 S.W.2d 182 (Tex.Sup.1968).

■ If there is any inconsistency between article 8309e–2 and the Tort Claims Act, then article 8309e–2 must control, since it is a more recent expression of legislative will. It was enacted by the 61st Legislature at a special session in 1969.[3] The Tort Claims Act, though enacted by the same legislature, was passed earlier at its regular session.[4]

Appellee attempts to distinguish the *Boswell* case on the ground that it involved an employee engaged in a proprietary rather than a governmental function. He argues that article 8309e–2 applies only to claims by proprietary employees and that the Tort Claims Act applies to claims by governmental employees. This argument fails for three reasons.

---

1. It is not necessary to decide whether this case is governed by the language above quoted rather than by the preceding language of § 3, which provides that a governmental unit is liable for personal injuries "when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment or office arising from the operation or use of a motor-driven vehicle and motor-driven equipment, * * * under circumstances where such officer or employee would be personally liable to the claimant in accordance with the law of this state."

2. Tex.Laws 1953, Ch. 327, § 3 at 806, as amended by Tex.Laws 1955, Ch. 131, § 3, at 467.

3. Tex.Laws, 2d Spec.Sess.1969, Ch. 22 at 143.

4. Tex.Laws 1969, Ch. 292, at 874.

In the first place, such a narrow construction of article 8309e–2 cannot help plaintiff, since if that article does not apply to governmental employees, there is no statute authorizing the city to obtain workmen's compensation insurance for their benefit, and therefore, no basis to claim that failure to obtain such insurance deprives the city of its common-law defenses.

In the second place, no legislative intent to distinguish between "proprietary" and "governmental" functions can be found in article 8309e–2. Its application to all municipal employees is shown by the following language in § 3:

> "Workmen's compensation benefits, as provided in this Act, may be provided for all of the employees of a city, town, or village, or may be provided only for one or more departments of the city, or for one or more groups of employees engaged in similar or related lines of work."

In the third place, the same conclusion is compelled by consideration of article 8309e–2 in the light of related constitutional and statutory provisions. It was enacted under the authority of Tex.Const., art. III, § 61, Vernon's Ann.St., which empowers the legislature to enact laws authorizing cities "to provide workmen's compensation insurance for all employees." Both constitutional and statutory provisions are similar to those authorizing workmen's compensation coverage for state and county employees.[5] There is no reason to hold that statutes authorizing the state and counties to provide workmen's compensation coverage are limited to "proprietary" employees, since both state and counties were immune from liability for all negligent injuries before the enactment of the Tort Claims Act.[6] It would be illogical to construe the similar provisions of article

8309e–2 as applying only to city employees engaged in proprietary functions.

 We hold that article 8309e–2 is applicable, and that the defense of contributory negligence is available to the city. Since we find that none of the reasons advanced by appellee are sufficient to justify the trial court in rendering judgment notwithstanding the answers to issues 13, 14 and 15, that judgment is reversed and judgment is rendered for defendant on the verdict.

Reversed and rendered.

---

5. Tex.Const., art. III, §§ 59, 60; Tex. Rev.Civ.Stat.Ann., art. 8309b (Texas A. & M. University), art. 8309c (counties) art. 8309d (University of Texas), art. 8309f (Texas Tech. University).

6. State: State v. Morgan, 140 Tex. 620, 170 S.W.2d 652 (1943); Counties: Heigel v. Wichita County, 84 Tex. 392, 19 S.W. 562 (1892).