

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

May 2, 1974

The Honorable David Wade, M. D.
Commissioner
Texas Department of Mental Health and
    Mental Retardation
Box 12668 Capitol Station
Austin, Texas 78711

Dear Dr. Wade:

Opinion No. H- 291

Re: Liability of community
centers for mental
health and mental retard-
ation services for injuries
to employees, and related
questions

You have asked our opinion on two questions which are:

"(1) Will Community Centers for Mental Health and
Mental Retardation Services be required to comply
with the provisions of Article 8309h, V.A.C.S.?

"(2) In an action to recover damages for injury to or
death of an employee in the course of his employment,
are the defenses enumerated in Section 1 of Article
8306, V.A.C.S., available to a Community Center for
Mental Health and Mental Retardation Services which
elects not to provide workman's compensation benefits
under Section 3.08 of Article 5547-203, V.A.C.S.?"

Article 8309h, § 2(a), Vernon's Texas Civil Statutes, provides:

"Sec. 2. (a) All political subdivisions of this state
shall become either self-insurers, provide insurance
under workmen's compensation insurance contracts or
policies, or enter into interlocal agreements with other
political subdivisions providing for self-insurance, extend-
ing workmen's compensation benefits to their employees."

Article 8309h was enacted pursuant to Article 3, § 60, Texas Constitution, and becomes effective on July 1, 1974, except as provided in § 2(b).

Section 1 of the article, the definitions section, provides in part:

> "Section 1.  The following words and phrases as used in this article shall unless a different meaning is plainly required by the context, have the following meanings, respectively:
>
> "(1) 'Political subdivision' means a county, home-rule city, a city, town, or village organized under the general laws of this state, a special district, a school district, a junior college district, or any other legally constituted political subdivision of the state."

Community Centers for Mental Health and Mental Retardation Services are established by counties, cities, hospital districts, school districts or combinations of these bodies.  If organized by a single governmental entity a community center is governed by the governing board of that entity or by an appointed board of trustees.  If organized by a combination of governmental entities, a community center will be governed by an appointed board.  Article 5547-203, § 3.02, V.T.C.S.  The centers are funded from both local and state sources.  Article 5547-203, § § 3.09, 3.10, 3.14, V.T.C.S.; Article 5547-204, § 4.03; General Appropriations Act 1974-1975, Acts 1973, 63rd Leg., ch. 659, p. 1786, 1829.

Community centers have been held to be political subdivisions under statutes concerning social security coverage, Attorney General Opinion M-149 (1967) and unemployment compensation coverage, Attorney General Opinion M-1033 (1971).  But they were determined to be neither "departments of the state government" for the purposes of Board of Control purchasing requirements, Attorney General Opinion M-316 (1968), nor "units of government" for the purposes of the Texas Tort Claims Act, Attorney General Opinion M-538 (1969).  The latter opinion held that community centers were merely component parts of units of government.  Attorney General Opinion M-1266 (1972) held that community centers are agencies of the state, although not state agencies.  That opinion distinguished its holding from that in Attorney General Opinion M-538 (1969) and said:

"A community center is not a political subdivision except where by statutory definition it is made so for certain purposes. . . ."

Although under ordinary circumstances a community center could not be said to be made a political subdivision by the statutory definition in Article 8309h, which when stripped to its essentials is that " '[p]olitical subdivision' means . . . any . . . legally constituted political subdivision of the state," Article 5547-203, §3.08, V. T. C. S., relating to community centers for mental health and mental retardation services, compels a different result. Section 3.08 provides:

"Sec. 3.08. The board or director may employ and train personnel for the administration of the various programs and services of a community center. The board shall provide appropriate rights, privileges and benefits to the employees of a community center consistent with those rights, privileges and benefits available to employees of the governing bodies which establish the center and is authorized to provide and may provide workmen's compensation benefits. The number of employees and their salaries shall be as prescribed by the board of trustees, as approved by the governing body or bodies of the local agency establishing the center."

The most recent amendment to this section was by the 63rd Legislature, and the sole effect of that amendment was the addition of the reference to workmen's compensation benefits. Article 8309h and Article 5547-203, §3.08 are in pari materia and must be construed together. 53 Tex. Jur. 2d, Statutes §186. Another factor suggesting that the statutes must be considered together is the fact that they were enacted during the same session of the Legislature, and each Legislature is presumed to be governed by a single spirt and policy. 53 Tex. Jur. 2d, Statutes §105. Therefore, it is our conclusion that the legislative definition of political subdivisions for the purposes of Article 8309h is intended to include community centers for mental health and mental retardation services, and it is our opinion that community centers will be required under Article 8309h to provide workmen's compensation benefits for their employees.

Article 5547-203, § 308, permitting community centers to provide workmen's compensation benefits, is already effective. Article 8309h, which we have determined requires community centers to provide workmen's compensation benefits for their employees, will become effective between July 1, 1974, and June 30, 1977, depending on the budget of each center. Article 8309h, § 2(b), V. T. C. S.

Your second question is relevant to centers which decline to provide benefits in the period in which coverage is permissive rather than mandatory. It is our opinion that so long as a center is not required to provide workmen's compensation benefits, and does not elect to do so, it does not forfeit its common law defenses. See, Tester v. County of Terry, Texas, 353 F. Supp. 170 (N. D. Tex. 1973); Boswell v. City of Sweetwater, 341 S. W. 2d 664 (Tex. Civ. App. Eastland, 1961, writ ref'd.); City of Dallas v. Brown, 475 S. W. 2d 833 (Tex. Civ. App. Dallas, 1971, writ ref'd, n. r. e.); Attorney General Opinions M-929 (1971), M-527 (1969).

## SUMMARY

Community Centers for Mental Health and Mental Retardation Services will be required to provide workmen's compensation benefits for their employees when Article 8309h, V. T. C. S., becomes effective, but they may provide benefits before that time. If a center elects not to provide workmen's compensation benefits for its employees, it will not forfeit its common law defenses until the mandatory provisions of Article 8309h become effective.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee